UNITED STATES, Appellee

v

LADDIE L. WEBSTER, Airman, U. S. Navy, Appellant

9 USCMA 615, 26 CMR 395

No. 11,148

Decided September 19, 1958

*Lieutenant (jg) Joseph A. Califano, Jr.,* argued the cause for Appellant, Accused. With him on the brief was *Commander Charles Timblin.*

*Lieutenant (jg) Gailen L. Keeling* argued the cause for Appellee, United States. With him on the brief was *Commander Craig McKee.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused pleaded guilty before a special court-martial to larceny, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. He was accordingly convicted and sentenced to a bad-conduct discharge, confinement for four months, partial forfeitures, and reduction in grade. The convening authority reduced the confinement and forfeitures ·and suspended the bad-conduct discharge until completion of appellate review. Intermediate appellate authorities affirmed, but the Secretary of the Navy suspended the bad-conduct· discharge for a twelve-month probationary period.

We granted review to consider whether reference to a Secretary of the Navy policy letter by the convening authority deprived the accused of a fair and impartial review. In his action, the convening authority recited the following:

"Inasmuch as a plea of guilty was entered to the charge of larceny as contained in the Specification of the Charge, the provisions of SECNAV Instruction 5815.2A are invoked and the following is a synopsis of the circumstances during the offense."

There follows a discussion of the circumstances surrounding the offense which the accused had described in a pretrial investigation. The commanding officer was obviously referring to paragraph 5b(2) of SECNAV Instruction 5815.2A (March 12, 1956), which provides:

"5. *Action*

"a. Commanding officers are directed to apprise members of their commands of the foregoing policy.

. . . . .

"b.(2) where a plea of guilty has been entered by the accused, the convening authority shall include a synopsis of the circumstances of the offense in amplification of the statements set forth in the specification."

One of the purposes of this section is to acquaint appellate authorities with the ·facts surrounding the offense so that they may better exercise their discretion in granting or denying clemency to an accused. No doubt those officials through whom the record passes in the appellate stages, including the Secretary of the Navy, would find it difficult to grant clemency simply on a plea of guilty for, as the policy letter itself states, "A determination can be made only after considering all the circumstances of the offenses and by the exercise of mature judgment." Indicative of the benefits which may accrue from this procedure in other cases and those which occurred in the case at bar is the fact that the Secretary of the Navy suspended the accused's bad-conduct discharge for a twelve-month period with a provision for automatic remission.

Appellate defense counsel cite as controlling our opinions in United States v Estrada, 7 USCMA 635, 23 CMR 99, and United States v Fowle, 7 USCMA 349, 22 CMR 139, wherein this Court found it to be prejudicial error for the members of the court-martial to be informed of SECNAV instructions. Those cases are clearly distinguishable. The basis upon which they were reversed was command influence on the judicial tribunal which determined the original punishment, i.e., that the court-martial felt constrained to sentence the accused to a punitive discharge because of the instructions of the Secretary of the Navy. Yet in *Estrada,* the Court made it explicitly clear that:

" . . . We do not condemn general service policies and pronouncements. It is a commander's prerogative to determine such policies and to promulgate them as he sees fit. However, it is clearly not within a commander's prerogative to inject his policies into judicial proceedings."

Essentially, then, the evil is not the

616

Navy policy—for discipline requires policy decisions in certain areas of military justice—but the fact that it is used to influence improperly the decisions of those performing judicial functions. Certainly, a policy declaration which merely requires a simple statement of the facts and circumstances of the offense does not constitute a suggestion by a superior that he desires a particular result. Such a statement is informative and not a veiled and deceptive method of compelling a decision according to the dictates of the higher headquarters. Therefore, we find nothing inappropriate in the aforementioned requirement.

Lastly, defense counsel argue that the language of the policy letter takes away from the convening authority the complete discretion which the Code gives him in approving or disapproving sentences. We have read the instruction but fail to find any suggestion to that effect. Rather, we are impressed with the admonition of SECNAV Instruction 5815.2A, paragraph 4d. which informs the reviewing authority that:

"d. Every case must be judged on its own individual merits. Accordingly, convening authorities, court-martial members, and reviewing authorities shall have full discretion to take such action or make such recommendations as they believe will best serve the ends of justice in the particular case."

In the face of such unambiguous language, we have no recourse but to conclude that in the case at bar the convening authority knew he was unfettered in his discretion and that the accused received a fair and impartial review. Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

I do not disagree with that portion of the SECNAV directive quoted in the majority opinion.

However, the majority opinion fails to mention that later in this SECNAV Instruction, while providing that "every case must be judged on its own individual merits," it is also specified that:

"(3) a reviewing authority who suspends the punitive discharge for a probationary period *shall include in his form action a statement of the reasons therefor.*

"c. In complying with SECNAV Instruction 5810.6, clemency recommendations to the Secretary of the Navy relative to restoration to duty for a person convicted of larceny or any other offense involving moral turpitude shall clearly set forth the factors considered, and *reasons for deviation from this policy.*" [Emphasis supplied.][1]

Under the Uniform Code of Military Justice, a convening authority can set aside a conviction and sentence for any reason or for no reason. Article 64, Code, supra, 10 USC § 864; United States v Massey, 5 USCMA 514, 18 CMR 138. In my opinion, the instruction imposes a limitation upon the convening authority's statutory right to exercise an unfettered discretion. The situation before us is not unlike that considered by the Superme Court in Winston v United States, 172 US 303, 19 S Ct 212, 43 L ed 456 (1899). Congress had provided that in cases of murder and rape, the jury could qualify its verdict by adding "without capital punishment," yet the trial judge instructed the jury that it could not qualify its verdict unless there were mitigating circumstances. The Supreme Court held the instruction to be erroneous and prejudicial in that it circumscribed the exercise of the jury's discretion. To require reasons from the convening authority for the exercise of an act of clemency by him is to define and circumscribe his discretion. United States v Doherty, 5 USCMA 287, 17 CMR 287.

In this area Congress has given the convening authority an absolute discretion. A service policy, or even a regulation, cannot deprive him of that

---

[1] For full text of the SECNAV Instruction see United States v Estrada, 7 USCMA 635, 23 CMR 99.

discretion. Command control can come from any one with superior rank or authority above the accused.

In addition, the majority opinion also fails to note that SECNAV Instruction 5815.2A (March 12, 1956) also contains the recommendation that persons convicted of theft and other offenses involving moral turpitude be dismissed from the service which we condemned in United States v Estrada, supra.

It would appear obvious that a commanding officer invoking the provisions of the Instruction would read it in its entirety. In *Estrada*, supra, we said:

"Certainly the Congress announced its opposition to any such improper influences when it enacted Article 37 of the Uniform Code of Military Justice, 10 USC § 837, which provides in part:

' . . . *No person subject to this chapter may* attempt to coerce or, by any unauthorized means, *influence the action of a court-martial or any other military tribunal* or any member thereof, in reaching the findings or sentence in any case, *or the action of any convening, approving or reviewing authority* with respect to his judicial acts.' . . ." [Emphasis partially supplied.]

In my view, improper command control can be exercised at appellate, as well as at trial, levels. I would set aside the decision of the board of review and vacate the action by the convening authority, and return the case for a new convening authority's review.