UNITED STATES, Appellee

v

MICHAEL E. BETTS, Seaman Apprentice, U. S. Naval Reserve, Appellant

12 USCMA 214, 30 CMR 214

*Lieutenant Colonel M. G. Truesdale,* USMC, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel R. G. Coyne,* USMC.

*Commander Benjamin H. Berry,* USN, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Martin Drobac,* USNR.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

A general court-martial convicted the accused of attempted sodomy, in violation of Article 80, Uniform Code of Military Justice, 10 USC § 880. It sentenced him to a bad-conduct discharge and reduction to the grade of seaman recruit. Intermediate reviewing authorities affirmed the findings and sentence, and we granted his petition for review to determine whether or not the action of the convening authority in affirming the findings and sentence was taken under the mistaken belief that his discretion was controlled by the provisions of a certain policy pronouncement hereinafter designated as SECNAV Instruction 1620.1, June 5, 1953, issued by the Secretary of the Navy.

The facts surrounding the substantive offense are of no importance, and hence we relate only those matters relevant to the issue granted. The accused was sentenced on June 9, 1960, and thereafter and prior to the convening authority's action, the accused, pursuant to the provisions of BUPERS Instruction 5815.1, June 3, 1960, submitted a letter requesting probation. This letter was addressed to the convening authority through accused's immediate superior officer and the commanding officer of the station in turn. The former recommended approval of the request, while the latter made a contrary recommendation. Also before the convening authority acted, the ac-

cused submitted a letter signed by his immediate superior, a commissioned warrant officer, and two chief petty officers, recommending that he be restored to duty. In the endorsement by the commanding officer of the station on accused's request was a reference to SECNAV Instruction 1620.1. The particular statement of this document which is relevant to the issue at hand provides that "Known homosexual individuals are military liabilities and must be eliminated from the service." However, this declaration must be considered in *pari materia* with other administrative requirements which have to do with elimination. Under the facts of this case, the accused would be classified in category two defined in paragraph 5 of the instructions. Persons in that class are to be separated administratively under conditions other than honorable unless they reject that form of separation. In the event an administrative discharge is refused, the instructions provide that the individual will be recommended for trial by court-martial. Here, the accused was offered an administrative discharge, but he preferred the judicial process.

In accordance with article 61, Uniform Code of Military Justice, 10 USC § 861, the staff legal officer of the convening authority submitted his review and recommendation. He considered the petitions of the accused and the one originated by the four Naval officers but concluded the punishment should not be lessened. Thereafter, the con-

vening authority approved the sentence and did not grant probation.

Although no mention is made in either the staff legal officer's review or the convening authority's action of any policy directive, SECNAV Instruction 1620.1 was referred to in the station commander's endorsement to accused's request for probation, which was directed to the convening authority and was attached to the record. Also, before trial, after the Article 32 investigation had been completed, that instruction was adverted to by the commanding officer of the station in his recommendation to the convening authority that the charge against accused be referred for trial by court-martial. For those reasons it is contended by appellate defense counsel that the convening authority considered the instruction and that it controlled his action on accused's request for probation.

This particular instruction was before this Court in United States v Doherty, 5 USCMA 287, 17 CMR 287. Certain of the observations we made therein are pertinent in this instance. In that case we directed attention to Article 64 of the Code, 10 USC § 864, which provides:

"In acting on the findings and sentence of a court-martial, the convening authority may approve only such findings of guilty, and the sentence or such part or amount of the sentence, as he finds correct in law and fact and as he in his discretion determines should be approved. Unless he indicates otherwise, approval of the sentence is approval of the findings and sentence."

and to Article 71(d) of the Code, 10 USC § 871. The latter contains an additional grant of authority to the convening authority, and is as follows:

"All other court-martial sentences, unless suspended, may be ordered executed by the convening authority when approved by him. The convening authority may suspend the execution of any sentence, except a death sentence."

We then went on to state our views to the effect that if the SECNAV Instructions were a positive command which denied the convening authority any discretion to modify the punitive discharge portion of the sentence, they were invalid as being in conflict with the Code. We there said:

"We need not decide in this case whether the statement that homosexuals must be eliminated from the Naval service is a positive command. We have no control over the administrative discharges of a service and we express no opinion as to what they may do in that field. But, if the language is construed as an inviolable command to those in the military judicial system, such as courts-martial, the convening authorities, or boards of review, then the instructions conflict with the Code and must yield. We do not interpret them to go that far, but we are convinced the convening authority did. If so, he failed to make that independent evaluation of the appropriateness of the sentence approved by him which Congress decreed he make." [5 USCMA at page 296.]

With the foregoing framework as a starting point, we look to this record to ascertain whether, assuming the convening authority considered the instructions, he understood they were not mandatory and accordingly made full exercise of the powers granted to him by the Code. Our interpretation of the record convinces us that he was fully advised and understood all of his prerogatives as a convening authority. We reach that conclusion for the following reasons. The accused was sentenced on June 9, 1960, and the convening authority did not act until July 22, 1960. While the precise date the record was forwarded to his headquarters is not disclosed, it was received in the office of the staff legal officer sometime prior to the latter date. In the interim period between the two above-mentioned dates, two letters recommending probation had been forwarded to and received by the staff legal officer on the staff of the

convening authority for they are referred to in his review. That correspondence is compelling evidence of the fact that at least four officers immediately under the command of the convening authority did not believe the SECNAV Instructions were mandatory. Otherwise they would not have joined in the petition, for the action requested would have been inconsistent with their belief. But more important, the staff legal officer was of the opinion that the instructions were not mandatory, and this belief he conveyed to the convening authority. In his review, after expressly stating he had given consideration to the two letters requesting clemency, the nature of the offense and other attending circumstances, he recommended that the sentence be approved. However, he went on much further, and in the final paragraph of his review he informed the convening authority of his powers and obligations in these words:

"In this connection, however, the convening authority is advised that he should not approve the finding of guilty unless he is satisfied beyond a reasonable doubt from all the evidence in this case of the accused's guilt and that such finding is correct in law and fact. The convening authority is further advised that he should not approve the sentence unless he finds it to be legal and appropriate, and that though legal and appropriate, he may set aside, modify, or suspend the sentence, or any part thereof, as in his discretion he feels it should be."

Specifically, he advised the convening authority that the latter should not approve the sentence unless he considered it appropriate and that he could set aside, modify, or suspend the sentence or any part thereof as he in his discretion determined to be suitable and proper. In the light of that advice, it would indeed be sheer conjecture for us to conclude that the convening authority believed he was compelled to affirm the punitive discharge because of the declaration in the instructions that homosexuals should be eliminated from the Naval service.

Another item of importance in this case is accused's request for probation. It referred to and was predicated upon the provisions of BUPERS Instruction 5815.1, mentioned previously. Those instructions were promulgated some seven years after the SECNAV Instruction herein involved, and they quote the following part of paragraph 88e(1) of the Manual for Courts-Martial, United States, 1951:

"'Ordinarily, the purpose of suspending the execution of a sentence is to grant the accused a probationary period within which he may show by his conduct that he is entitled to have the suspended portion of the sentence remitted. The convening authority should suspend the whole of a sentence (except death) when it appears to him that such action will promote discipline and aid in the rehabilitation of the accused.'"

This quotation is followed by two other provisions. One admonishes that:

"Nothing in this Instruction is to be construed as an attempt to limit the full discretion of reviewing authorities in acting on sentences or as an attempt to interfere with their duty to review each sentence for adequacy, appropriateness, and legality."

And the other states:

"*Suspending Punitive Discharges.* In acting on the record of trial, convening and supervisory authorities are encouraged to suspend a member's punitive discharge when, based upon thorough consideration of each case on its individual merits, there is reason to believe that the member can and will render honorable and useful service, if restored to duty on probation."

The whole tenor of this document is to give the reviewing authorities wide latitude in suspending the execution of sentences and it in no way is restrictive as to the crime involved. Surely, had the convening authority decided that probation was appropriate in this case, he had ample authori-

**217**

ty emanating from higher headquarters to justify that action.

Finally, another factor which militates against the defense contention is that the convening authority could have administratively separated the accused from the Naval service. True it is that the accused had been offered an opportunity to accept that form of discharge but rejected it. However, his rejection was not binding on the Naval service and, after accused had been sentenced by a court-martial to punitive separation, the convening authority could have remitted the discharge adjudged by the court-martial and undertaken administrative action to accomplish accused's separation by a less serious type of discharge. Cf. United States v Plummer, 12 USCMA 18, 30 CMR 18. There is no proscription in the SECNAV Instructions which prohibits that action from being taken. Moreover, had the convening authority considered he was shackled and that clemency of the type requested was appropriate, undoubtedly he would have recommended that disposition to higher headquarters. Cf. *Doherty*, supra.

In summation, this record shows affirmatively that the convening authority was informed properly concerning his powers by his staff legal officer and we are furnished with no base for a conclusion that he disregarded the advice, the Articles of the Code, our decided cases, and later Naval regulations because he may have been aware of a policy declaration that sodomists should be separated from the service. While command influence is condemned at all levels, policy declarations generally conceded to be necessary to discipline and order are proper. The important question is not whether the convening authority gave consideration to the policy but rather did he understand fully that he had a choice to accept or reject it. We have no doubt in the case at bar that he knew of those alternatives.

The decision of the board of review is affirmed.

**218**

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

In my opinion, the incorporation by reference in the staff legal officer's review of Naval policy considerations concerning the sentence presents a fair risk the convening authority was thereby led to believe that an "appropriate" penalty was required to include an approved punitive discharge. Accordingly, I deem reversal of the proceedings and the return of the record for preparation of a new review to be required. United States v Fields, 9 USCMA 70, 25 CMR 332; United States v Doherty, 5 USCMA 287, 17 CMR 287.

Tried by general court-martial, the accused pleaded not guilty to a charge of sodomy, in violation of Uniform Code of Military Justice, Article 125, 10 USC § 925. He was found guilty of attempted sodomy, in violation of Code, supra, Article 80, 10 USC § 880, and sentenced to bad-conduct discharge and reduction to the lowest enlisted grade. Intermediate appellate authorities affirmed, and we granted accused's petition for review on the issue whether the board of review erred in failing to order a new post-trial advice in light of the convening authority's consideration of the policy announced in a SECNAV Instruction.

In connection with a review of the record of his trial, the accused forwarded a request for the probationary suspension of his discharge to the convening authority through appropriate Navy channels. The endorsement by his immediate commanding officer transmitted the request, "highly recommending approval." The second endorsement, signed by the Commanding Officer, U. S. Naval Station, Subic Bay, called attention to the provisions of SECNAV Instruction 1620.1, June 5, 1953, as supplemented on March 20, 1959, and stated pertinently:

"2. *Reference (a)* [the cited SEC NAV Instruction] *sets forth departmental policy regarding personnel involved in homosexual acts, and emphasizes the fact that homosexuals are military liabilities and must be elimi-*

*nated from the service.* It is further the view of the Navy Department as set forth in the aforementioned reference that one who voluntarily participates in a passive role in such acts is no less a homosexual than the active participant." [Emphasis supplied.]

The endorsement concluded with a recommendation that, "In view of the foregoing, . . . the request for probation be denied."

With respect to the foregoing matter, the staff legal officer made the following comment in his review:

". . . The staff legal officer has also considered the accused's request for probation which is also attached to the record.

*"After having due regard to the nature of the offense of which BETTS is convicted* and the entire circumstances of this case, it is my opinion that the sentence is legal and appropriate. I would recommend that the sentence be approved.

"In this connection, however, the convening authority is advised that he should not approve the finding of guilty unless he is satisfied beyond a reasonable doubt from all the evidence in this case of the accused's guilt and that such finding is correct in law and fact. The convening authority is further advised that he should not approve the sentence unless he finds it to be legal and appropriate, and that though legal and appropriate, he may set aside, modify, or suspend the sentence, or any part thereof, as in his discretion he feels it should be." [Emphasis supplied.]

In my opinion, the attachment to the review of the accused's petition for probation together with the endorsement of the intermediate commander concerning the SECNAV Instruction could have no effect other than to bring to the attention of the convening authority that it was the policy of the Department of the Navy to have all such personnel immediately separated. In United States v Doherty, supra, we condemned the use of this very instruction as an attempt to circumscribe the discretion of the con-

vening authority, and stated, at page 295:

". . . An accused is entitled to have his record reviewed by an officer who is free from compulsion to act in a specified manner. If he has discretion, he should not be saddled with a requirement which prevents it from being exercised for the benefit of an accused."

And in United States v Plummer, 7 USCMA 630, 23 CMR 94, we unreservedly censured a staff judge advocate's review which, *inter alia,* pointed out that " 'it is the custom of the Army to deal severely with a barracks thief.' " Of the standard to be applied in measuring the inclusion of such references in the post-trial review, we remarked, at page 632:

"At best, the Staff Judge Advocate's advice here is ambiguous. It can reasonably be construed as saying that, as a matter of law, it would be contrary to 'the custom of the Army' to ameliorate the accused's sentence. If it was so construed by the convening authority, the accused did not receive the benefit of the convening authority's 'conscious discretion' on the quantum of punishment that he should approve. United States v Massey, supra, page 523."

The situation described in United States v Doherty and United States v Plummer, both supra, is the same as that now before us. The accused's petition for clemency was made a part of the staff legal officer's review, and the convening authority's attention was invited to it. Thus, he could not escape reading the second endorsement which, in forceful terms, informed him of the Navy's conclusion that all homosexuals "are military liabilities *and must be eliminated from the service."* (Emphasis supplied.) If that were not enough, the legal officer specifically based his recommendation for approval of the sentence upon "the nature of the offense of which BETTS is convicted" as well as the other circumstances in the case. The insertion of Naval policy as a form of command control into the judicial proceeding before the convening authority could

hardly be clearer. It requires reversal. Compare *United States v Fowle*, 7 USCMA 349, 22 CMR 139, and *United States v Estrada*, 7 USCMA 635, 23 CMR 99.

Turning to the rationale of the principal opinion, I desire to point out wherein I believe its reasoning goes astray. Initially, it emphasizes that a lieutenant, a warrant officer, and two petty officers joined in a recommendation that the accused's discharge be suspended. This is offered as "compelling evidence of the fact that at least four officers immediately under the command of the convening authority did not believe that the SECNAV Instructions were mandatory." Otherwise, it is contended, they would not have sought clemency for the accused. I am unable to perceive by what process of reasoning this conclusion follows. Nothing indicates the officers were aware of the contents of the endorsement on the request for probation. A reading of the petition indicates that they had carefully studied the accused's background and that they were familiar with his proclivities. They expressed the belief that Betts was involved in an isolated instance of misconduct which did not justify his elimination from the service. Nowhere is reference made to the terms of the SECNAV Instruction, and it is the sheerest of speculation to argue that they possessed any opinion concerning the requirements of the instruction in question. Indeed, if the thought processes of those who sought grace for the accused are to be explored, it is suggested that it might be more compatible with their reasoning to argue that, if aware of the Navy policy, they believed it to be mandatory in nature but sought an official waiver of its application in this case. Be that as it may, the thoughts expressed by these subordinates in a separate petition are of minimal importance when compared to the forthright manner in which the intermediate commanding officer reminded the convening authority of the necessity for separating all deviates.

A second reason for finding the review and its attachments free from impropriety is premised upon the inclusion by the staff judge advocate in his review of a statement concerning the independent responsibilities of the convening authority. That advice is as follows:

"In this connection, however, the convening authority is advised that he should not approve the finding of guilty unless he is satisfied beyond a reasonable doubt from all the evidence in this case of the accused's guilt and that such finding is correct in law and fact. The convening authority is further advised that he should not approve the sentence unless he finds it to be legal and appropriate, and that though legal and appropriate, he may set aside, modify, or suspend the sentence, or any part thereof, as in his discretion he feels it should be."

This Court has suggested the inclusion of language similar to the foregoing extract in all post-trial reviews in order that convening authorities may be made aware of their responsibilities. *United States v Jemison*, 10 USCMA 472, 28 CMR 38. In my opinion, however, it does not cure the error before us, for the policy made known to the convening authority effectively informed him that an "appropriate" sentence involved approval of the bad-conduct discharge. The advice nowhere purports to inform him of the effect of the instruction upon his freedom of action, nor does it indicate in any manner that he is free to retain the accused despite the departmental policy. It is simply unreasonable to conclude that any convening authority would grant probation in face of the positive declaration of the Navy Department that all persons circumstanced as the accused must be eliminated. Rather, it is apparent that he would defer to the view of his superiors and conclude that he was required to approve the discharge as an "appropriate sentence."

The third ground for concluding that the convening authority's discretion was not fettered is based upon the accused's request for probation and the reference therein to BUPERS Instruction 5815.1, June 3, 1960. In

that document, the Chief of Naval Personnel provides "supplementary guidance for convening and supervisory authorities in connection with suspension of court-martial sentences of enlisted Navy personnel." Reference is made in the principal opinion to the fact that the directive encourages the suspension of discharges "based upon thorough consideration of each case on its individual merits," and that nothing contained therein is to be construed "as an attempt to interfere with their duty to review each sentence for adequacy, appropriateness, and legality." The author of the principal opinion reasons that the bare reference to this directive was sufficient to inform the convening authority of his unfettered discretion, for it gives him "wide latitude in suspending the execution of sentences."

In the first place, there is only a nominal reference to the number of the BUPERS Instruction in the accused's request for probation. Compared to the provocative summarization of the SECNAV Instruction relating to the separation of homosexuals, I am doubtful that the simple inclusion of that file number was sufficient to bring its contents to the attention of the convening authority. Assuming, however, that he was aware of the BUPERS Instruction, I am certain it cannot support the contention that this convening authority was fully aware of his unchained authority over the sentence. To the contrary, the Chief of Naval Personnel in the mentioned directive set forth six factors to which consideration should be given in determining whether to suspend a punitive discharge. These are:

"(1) *Nature of instant offense(s) and circumstances leading up to and surrounding commission of the offense(s).*

"(2) Previous performance (e. g., marks, commendations, and number, nature, and recency of previous military and civil offenses, and action taken thereon).

"(3) Personal characteristics and data (e. g., age and maturity, years of schooling completed, length of service, GCT/AFQT, psychiatric and medical evaluation).

"(4) Member's motivation for further naval service (e.g., has he requested probation?).

"(5) Evaluation of service potential made by senior petty officer, division officer, and commanding officer, or other desgnated [sic] officer.

"(6) The fact that in deserving cases the Naval Clemency Board recommends to the Secretary of the Navy that members sentenced to punitive discharge be restored to duty on probation (see reference (a)).

"In evaluating the foregoing factors convening and supervisory authorities should bear in mind that repeated offenders, members who are emotionally immature or of low moral character, and those who have little or no motivation for further service are poor restoration risks. Factor (6) is mentioned since it may sometimes be preferable to defer a decision relative to probation until after the member has completed a period of work and training under close supervision in confinement wherein he is helped to develop proper work habits and attitudes. In connection with the use of the foregoing factors, convening and supervisory authorities are reminded that a reasonable probability of success is sufficient and that a virtual mathematical certainty of success is neither required nor desired." [Emphasis supplied.]

The BUPERS directive also provides that a punitive discharge normally should not be suspended until the accused requests such action in writing. It thereafter states:

". . . In those cases wherein a member submits such a request to the supervisory authority, *the commanding officer should include in his endorsement thereon pertinent information concerning the factors discussed in subparagraph 3a of this Instruction."* [Emphasis supplied.]

It will be seen that the terms of this order were precisely followed in this case. The intermediate commander endorsed the accused's request for

**221**

probation and included in his statement information concerning one of the factors discussed in paragraph 3a of the instruction, *i.e.*, the nature of the offense.[1] Thus, he specifically directed the convening authority's attention to Navy policy concerning the discharge of offenders like the accused. Accordingly, rather than to serve as evidence of the convening authority's knowledge that he was free to suspend accused's sentence, it appears to me that the reference in the request for probation to BUPERS Instruction 5815.1, supra, and scrutiny of its contents emphasizes to that officer his duty automatically to consider the accused to be unrestorable.

Finally, attention is drawn to the fact that the accused's sentence could have been remitted and his administrative discharge from the service separately ordered. It is certainly true that this course of action could have been followed or that the convening authority might expressly have recommended it to higher authority as he did in United States v Doherty, supra. I suggest, however, that consideration of the alternatives available to the convening authority has little to do with the question before us. See the separate opinions of Chief Judge Quinn and myself in United States v Harman, 12 USCMA 180, 30 CMR 180. And, if we are to speculate, it seems more reasonable to conclude that if the convening authority believed he was required to accomplish the accused's separation, he would follow the simpler procedure of merely approving the punitive discharge rather than to suspend its execution and immediately commence administrative proceedings leading to an undesirable separation.

In sum, then, I am of the view that the incorporation in the staff legal officer's review of the endorsement emphatically referring the convening authority's attention to the provisions of SECNAV Instruction 1620.1, supra, together with his recommendation that the sentence be approved in view of the nature and circumstances of the offense, is sufficient to create a fair risk that the action taken with respect to the accused's sentence was not completed in an atmosphere free from policy considerations. United States v Plumer, supra; United States v Doherty, supra. The contrary view taken by my brothers gives renewed life to the discredited dictum in the *Doherty* case that policy matters may be given weight in determining whether to approve an appropriate sentence and effectively eliminates the force of our declaration in United States v Jemison, supra, that administrative policies, even though favorable to an accused, should not form any part of the basis for the convening authority's judicial action. I record my dissent as I do not believe the unfettered authority over the sentence conferred by Congress upon reviewing authorities may be taken away by the policies of the Secretary of the Navy.

I would reverse the decision of the board of review and return the record of trial for a new post-trial review by another convening authority.

---

[1] While not precisely before us in this case, I believe that much of the material set forth in the BUPERS Instruction is of questionable legality. United States v Jemison, 10 USCMA 472, 28 CMR 38; United States v Webster, 9 USCMA 615, 26 CMR 395. I particularly draw attention to the requirement that probationary suspensions should not normally be awarded in the absence of a written request from the accused. Not only does the Code place upon reviewing authorities the *affirmative* responsibility to determine whether a suspended sentence is appropriate but it also places upon the staff legal officer the positive duty to advise the convening authority in this respect. Uniform Code of Military Justice, Articles 61, 64, 10 USC §§ 861, 864. It seems to me that the introduction of the separate request for probation with endorsements containing information and recommendations concerning whether such action should be taken may well constitute an unlawful interference with these Congressionally placed duties. The question, however, need not be now decided.