UNITED STATES, Appellee

v

ALFRED L. RIVERA, Interior Communications Fireman,
U. S. Navy, Appellant

12 USCMA 507, 31 CMR 93

No. 15,104

November 9, 1961

*Lieutenant Colonel M. G. Truesdale*, USMC, argued the cause for Appellant, Accused.

*Major Elvin R. Coon, Jr.*, USMC, argued the cause for Appellee, United States.

## Opinion of the Court

QUINN, Chief Judge:

A divided board of review affirmed the accused's conviction by general court-martial of two specifications of sodomy, in violation of Article 125, Uniform Code of Military Justice, 10 USC § 925.[1] The issue which split the board of review, and which is the basis of the accused's petition to this Court, is whether the Navy policy for disposition of homosexuals embodied in SECNAV Instruction 1620.1 deprived the convening authority of discretion to dismiss the charges or to refer them to other than a general court-martial for trial.

In a prefatory statement the SEC NAV Instruction states that homosexuality may present a medical problem to the individual, but it also poses a military disciplinary problem. The Instruction, which is addressed to "All Ships and Stations," then declares that "Known homosexuals are military liabilities and must be eliminated from the service." Homosexuals are classed in three broad categories and a separate procedure for disposition of persons falling within each class is prescribed. In Class I are persons who engage in an act of homosexuality with the exercise of some sort of force or fraud. Class II includes persons who engage in acts not within the scope of Class I, that is, the act is accomplished with the consent of the other party. Class III covers persons who exhibit or admit "tendencies" of homosexuality, or against whom there are "no specific provable acts or offenses." The acts charged to the accused in this case brought him within Class II. The procedure prescribed for disposition of such a case is as follows:

"(2) *Disposition*. Disposition will be accomplished by administrative separation under conditions other than honorable, unless the individual resists separation from the service under such conditions, in which case he will be recommended for trial by court-martial. Detailed procedure follows:

"(3) Sample charges and specifications for trial by general court-martial shall be drawn and the accused shall be confronted with them. He shall be offered the following alternatives:

"(a) *1*. Officers shall be informed that acceptance will be recommended of a resignation in tenor as follows: 'I hereby tender my resignation for the good of the service and to escape trial by general court-martial. I understand that my separation from the naval service effected by acceptance of this resignation will be under conditions other than honorable; that I may be deprived of virtually all rights as a veteran under both Federal and State legislation; and that I may expect to encounter substantial prejudice in civilian life in situations wherein the type of service rendered in any branch of the Armed Forces or the character of separation therefrom may have a bearing.'

"*2*. If an accused enlisted person refuses to sign a statement so worded, he shall be recommended for trial by general court-martial. Recommendations for trial shall be prepared and submitted to the officer exercising general court-martial jurisdiction."

The Instruction is not new to this Court. As recently as last term, we rejected a broadside attack upon it on the ground that the language of its provisions compelled the convening authority to approve the punitive discharge adjudged by the court-martial and to disregard a request for proba-

---

[1] The court-martial sentenced the accused to a bad-conduct discharge, total forfeitures, confinement at hard labor for one year and reduction to fireman recruit. The convening authority approved the findings of guilty but modified the sentence by reducing the period of confinement to six months.

tion approved by the accused's immediate commander. United States v Betts, 12 USCMA 214, 30 CMR 214. We pointed out that as a policy declaration on a matter affecting good order and discipline, the terms of the Instruction did not necessarily require the convening authority to abdicate his independent judgment in the performance of his court-martial functions. Cf. United States v Hawthorne, 7 USCMA 293, 22 CMR 83. Consequently, since the record in the case convincingly indicated that the convening authority did not mistakenly regard the Instruction as a command restriction on his statutory authority, we sustained his action approving the findings of guilty and the sentence of the court-martial. On the other hand, in an earlier case, it appeared from the record of the proceedings that the convening authority acted on the erroneous assumption that his statutory responsibilities in regard to courts-martial, as distinguished from administrative action, were circumscribed by the Instruction. We, therefore, set aside his action and directed reconsideration of the case. United States v Doherty, 5 USCMA 287, 17 CMR 287. "The important question," we said in the Betts case, ▆▆▆▆▆ ▆ supra, page 218, "is not whether the convening authority gave consideration to the policy but rather did he understand fully that he had a choice to accept or reject it." Similarly, affirmance or reversal here depends not upon whether the convening authority knew of the provisions of the Instruction, but upon whether he believed it was a command mandate to put aside all discretion as to disposition of the charges and to refer them only to a *general* court-martial for trial. Cf. United States v Hawthorne, supra.

To show that the convening authority regarded the policy as a mandatory command, the accused points to two references to the Instruction in the staff legal officer's pretrial advice. These references are as follows: At the top of the advice is the statement:

"Ref. (a) MCM 1951, par. 35
    (b) SECNAVINST 1620.1"

and paragraph 4 in the text of the advice says that "In accordance with the provisions of paragraph 5b of reference (b), subject man has been interviewed and afforded the opportunity to accept an undesirable discharge in order to escape trial by general court-martial, but has refused to do so." The references do no more ▆▆▆▆▆▆ ▆ than call attention to the Instruction. They do not indicate or intimate that the Instruction required the convening authority to abdicate his court-martial responsibilities. On the contrary, the advice contains a positive indication that neither the staff legal officer, nor the convening authority acting on the advice, regarded his duties under the Uniform Code as curtailed by the Instruction. It does not refer to the Instruction alone; it also cites paragraph 35 of the Manual for Courts-Martial. That paragraph sets out the broad powers of the convening authority over the disposition of pending charges and the obligations of the staff legal officer. In the discharge of their respective functions the staff legal officer recommended, and the convening authority dismissed, a specification of one of the charges because of insufficient evidence to support it. These actions reflect an independence of thought and conduct which is inconsistent with a claim of blind obedience to a mistaken interpretation of the commands of the Instruction. We agree with the board of review that "there is no indication that the convening authority was misled by the directive . . . [and] there is nothing which would support a reasonable conclusion or inference that . . . [he] did not act independently of any policy declaration in referring this case to trial by general court-martial." See United States v Betts, supra.

The decision of the board of review is affirmed.

Judge KILDAY concurs.

FERGUSON, Judge (dissenting):

I dissent.

Once more this Court is faced with an issue fraught with the danger of command control through limitations placed upon the discretion of convening

authorities by the Secretary of the Navy. That official has decreed the necessity for separating homosexual personnel from the naval service. With the wisdom of this pronouncement, there can be no argument, but when it also commands that it be done, unless the accused consents to administrative proceedings, by means of a general court-martial, the wall with which Congress has surrounded the independence of a convening authority has been breached. I cannot believe the Secretary may by regulation take away that which Congress has conferred by statute and, thus, with all deference to my brothers, I am unable to subscribe to their conclusion that this accused has not been injured by the convening authority's consideration of SECNAV INSTRUCTION 1620.1.

In order to develop the basis for my disagreement with the principal opinion, it is necessary briefly to advert to the factual background of this case. The accused was charged with sodomy, in violation of Uniform Code of Military Justice, Article 125, 10 USC § 925, and indecent assault, in violation of Code, supra, Article 134, 10 USC § 934, on August 30, 1960. A pretrial investigation was completed on September 23, 1960, and trial by general court-martial was recommended. On October 1, 1960, the staff legal officer prepared his advice to the convening authority. Pertinent portions of that document are as follows:

"From: Staff Legal Officer
To: Commander Destroyer Force, U. S. Atlantic Fleet
Subj: Recommendation for general court-martial in the case of RIVERA, Alfred L., 902 59 55, ICFN, USN
Ref: (a) MCM 1951, par. 35
(b) SECNAVINST 1620.1

. . . . . . . .

"4. In accordance with the provisions of paragraph 5b of reference (b), subject man has been interviewed and afforded the opportunity to accept an undesirable discharge in order to escape trial by general court-martial, but has refused to do so.

"5. It is recommended that subject man be brought to trial before a general court-martial of the United States."

At this time, the accused's enlistment had expired and, apparently because of his prior record, he was ineligible to re-enlist in the naval service.

SECNAV INSTRUCTION 1620.1, to which the advice referred, concerns the disposition of homosexuals in the naval service. With respect to persons circumstanced as the accused, it provides that court-martial charges will be preferred and presented to the offender. If the offender agrees after such confrontation to accept a discharge under conditions other than honorable, he will be administratively separated. If he refuses to accept such a discharge, the directive requires that he be recommended for trial by general court-martial. Thus, it provides pertinently in paragraph 5b:

"If an accused enlisted person refuses to sign a statement so worded [accepting discharge], he shall be recommended for trial by general court-martial."

Moreover, the instruction as a whole makes it clear that homosexuals must be separated. Thus, its preamble states they are "military liabilities and must be eliminated from the service." If a homosexual refuses to accept an administrative discharge, the instruction states that he "shall" be tried by general court-martial. Finally, it notes that this "procedure shall be followed without exception."

Before directing the trial of any charge by general court-martial, a convening authority is required to refer it to his staff judge advocate or legal officer for consideration and advice. He may not thereafter refer it to trial unless it has been affirmatively found that the charge alleges an offense under the Code and is warranted by the evidence contained in the report of investigation. Moreover, he possesses unhampered judicial discretion to determine the type of tribunal which shall try the cause or, indeed, whether it shall be tried at all. Manual for Courts-Martial, United States, 1951,

510

paragraphs 33, 35; United States v Foti, 12 USCMA 303, 304, 30 CMR 303; United States v Greenwalt, 6 USCMA 569, 20 CMR 285; United States v Williams, 6 USCMA 243, 19 CMR 369; United States v Bunting, 4 USCMA 84, 15 CMR 84.

We have heretofore condemned attempts to interfere with the convening authority's power over charges. In United States v Messenger, 2 USCMA 21, 6 CMR 21, we early pointed out that a board of review might not dismiss a charge on the sole basis that the convening authority should have disposed of it by means other than trial by court-martial. In United States v Doherty, 5 USCMA 287, 17 CMR 287, we stated, concerning the very instruction now before us, at page 296:

"We need not decide in this case whether the statement that homosexuals must be eliminated from the Naval service is a positive command. We have no control over the administrative discharges of a service and we express no opinion as to what they may do in that field. *But, if the language is construed as an inviolable command to those in the military judicial system, such as courts-martial, the convening authorities, or boards of review, then the instructions conflict with the Code and must yield.*" [Emphasis supplied.]

In United States v Hawthorne, 7 USCMA 293, 22 CMR 83, we were confronted with the effect of an Army commander's directive that habitual offenders, as a general rule, should have their cases referred to trial by general court-martial. Because of this restriction by superior authority upon the discretion of inferior commanders in disposing of charges, we struck down accused's conviction, stating at page 299:

"Perhaps, as the Government contends, the policy directive was not actually intended to put subordinate commanding officers 'in a mental strait jacket which denies . . . [them] any freedom of choice.' United States v Doherty, supra, page 294. *Unquestionably, however, the language used is susceptible of such construction. In our opinion,* *there is a strong risk that it was so construed by appropriate courts-martial commanding officers."* [Emphasis supplied.]

In United States v Isaacs, 9 USCMA 838, this Court reversed by order an accused's conviction of homosexual acts when it found that the staff legal officer's pretrial advice expressly informed the convening authority that SECNAV INSTRUCTION 1620.1 made trial by general court-martial mandatory. Finally, in United States v Jemison, 10 USCMA 472, 28 CMR 38, we stated, at page 474:

". . . Indeed, we question whether administrative policies, even though favorable to an accused, should form any part of the basis for the convening authority's action. See United States v Doherty, 5 USCMA 287, 17 CMR 287; United States v Webster, 9 USCMA 615, 26 CMR 395."

In my opinion, the foregoing authorities compel the conclusion that this case presents a fair risk that the convening authority was influenced by the SECNAV INSTRUCTION in referring these charges to trial. While the staff legal officer did not expressly state that trial by general court-martial was mandatory, as in United States v Isaacs, supra, he called the convening authority's attention to the directive and pointed out that the accused had refused administrative separation "to escape trial by general court-martial." In the next and concluding paragraph, trial by general court-martial was recommended. It takes no great amount of reasoning ability to follow the logical process embodied in the advice, for these statements no less certainly informed the convening authority that, because of the directive, he must try this accused by general court-martial. The direction of such action by that officer establishes a fair risk that he was so influenced, particularly in the absence of any contrary explanation by the Government of the reasons for the reference.

Indeed, when the principal opinion rejects this construction of the language of the advice, it is in effect

**511**

saying accused was falsely informed that the alternatives available were his acceptance of an undesirable discharge or trial by general court-martial. The whole thread of its argument is that the advice's wording left the convening authority free to make any disposition of the charges he saw fit. Yet, under the wording of the directive and of the advice, it seems clear that only two courses of conduct were originally available. The accused had refused to accept the first—administrative discharge —and that left only trial by general court-martial.

It is in this area that I believe the rationale of the principal opinion goes astray. · It premises a belief that the convening authority acted independently upon nothing more than a reference in the advice to paragraph 35 of the Manual and his dismissal of one of the specifications on the basis of insufficiency of the evidence. This overlooks the fact that the advice, unlike the post-trial review in United States v Betts, 12 USCMA 214, 30 CMR 214, did not inform the convening authority of his duty to act independently, and that it expressly pointed out accused's refusal to accept an administrative discharge, under the mentioned Instruction, "to escape trial by general court-martial." Moreover, the dismissal of a charge involving a homosexual act upon the basis of insufficiency of evidence is entirely consistent with the reliance upon the directive, for it warns of the danger inherent in basing action thereunder upon unsubstantiated allegations. Finally, it is simply unreasonable to believe that a naval convening authority would ignore the explicit and mandatory language of a directive promulgated by the Secretary of the Navy. We have too many times seen the pernicious effect of command influence in records before this Court to adopt that viewpoint unless it is supported by some positive and cogent evidence, a factor sadly lacking here. See, for example, the language of the Chief Judge in United States v Doherty, supra, wherein he remarked, at page 297, that the convening authority "presumptively is much more familiar with the nature and operation

**512**

of policy matters" than court members.

It must be understood that this accused had completed his enlistment and was ineligible for re-enlistment. Thus, except for the directive, with its mandatory alternatives of accepting an undesirable separation or directing trial by general court-martial, the convening authority may well have decided simply to permit his normal separation. This is admittedly speculative, but it is a factor bearing heavily on the question whether the directive influenced his action upon the charges.

A second reason for my disagreement with my brothers is their application of the standard whether the convening authority knew he was free to accept or reject the Secretary's policy. This concept is first found in the Betts case, supra, in which I also disagreed with the Court's conclusion. In my opinion, its use is misleading. We have heretofore noted that administrative policies should be kept out of military justice proceedings. United States v Jemison, supra; United States v Fowle, 7 USCMA 349, 22 CMR 139; United States v Estrada, 7 USCMA 635, 23 CMR 99. Indeed, we have drawn a strong line between judicial and administrative proceedings. United States v Phipps, 12 USCMA 14, 30 CMR 14; United States v Simpson, 10 USCMA 229, 27 CMR 303. To say that, so long as he knew of his right of rejection, a convening authority may "accept" the command of an administrative instruction and carry out its terms in connection with an accused's trial not only blurs the boundaries of the judicial process but also permits generic reference of charges to trial in conformance with the wishes of superior authority rather than by individual consideration of each case. United States v Hawthorne, supra. In my view, the correct measure is simply whether there is a fair risk that this convening authority referred these charges to trial by general court-martial because of SECNAV INSTRUCTION 1620.1 or because of their nature and the particular circumstances. In this record,

the former is fairly shown and I would reverse.

I would set aside the decision of the board of review and return the case to the convening authority for reconsideration of the charges in light of this opinion.