PER CURIAM:
We previously affirmed the findings of guilty and the sentence in this case. United States v. Wojciechowski, No. 83 4396 (N.M.C.M.R. 18 January 1984). We agreed, however, to reconsider our decision to ensure that the late submission of pleadings by civilian counsel would not operate to the detriment of appellant.
Contrary to his pleas, appellant was convicted at a general court-martial bench trial of two specifications of distributing cocaine, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The sentence approved on review below provides for dishonorable discharge, confinement at hard labor for 22V2 months, forfeiture of all pay and allowances, and reduction to paygrade E-l. Appellant assigns three errors for our consideration. After careful examination upon reconsideration, we find no merit in these assignments.
I.
Initially appellant contends that the Court lacked jurisdiction over the offenses, both of which occurred in the civilian community of Oceanside, California, near Marine Corps Base, Camp Pendleton, California. The evidence of record reveals that at the time of these offenses appellant was on appellate leave, awaiting execution of a bad conduct discharge awarded by a prior general court-martial. On 21 December 1982, Private Lopez, a Government informant, telephoned appellant to arrange a purchase of marijuana from appellant at a Marine Corps Exchange gas station aboard Camp Pendleton. This telephone call apparently was preceded by several phone calls from appellant to Private Lopez aboard the Base discussing the same sort of arrangement. The transaction was not consummated aboard the Base, apparently because appel *433 lant was “hot” as a result of prior drug offenses and was reluctant to bring drugs aboard a military installation. When this transaction was not completed, Private Lopez again contacted appellant and arranged a meeting off-base. On 23 December 1982, Private Lopez, accompanied by Lance Corporal Palomares, another undercover agent, met appellant at a location about 10 miles from Camp Pendleton and purchased 1.5 grams of cocaine from him. On 29 December 1982, a second transaction was arranged and the same two undercover agents met appellant near the same location and purchased 3.0 grams of cocaine. Appellant was aware that the two men were Marines, and on both occasions prior to completion of the sales the men advised appellant that they intended to sell the drugs aboard the Base.
In United States v. Trottier, 9 M.J. 337 (C.M.A.1980), noting the special military significance of narcotics in light of their disastrous effect on health, morale, and fitness for duty, the United States Court of Military Appeals concluded that “almost every involvement of service personnel with the commerce in drugs is ‘service connected’.” Appellant argues that in deciding Trottier the Court has wrongly ignored the principles of O’Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), and Relford v. Commandant, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). We are unable to concur in appellant’s argument.
Unless and until the holding of the Court of Military Appeals is retracted by that Court or reversed by the United States Supreme Court, Trottier remains good law and binding precedent in military courts. Even beyond this, and analyzing the facts of this case under the Relford criteria, court-martial jurisdiction appears clear. Mere off-base occurrence does not deprive a court-martial of jurisdiction over a crime. The sale of cocaine by an active duty service member, even one on appellate leave, to other known service members whose avowed intent was resale aboard a military installation easily meets the criteria of Relford.
Court-martial jurisdiction over the offenses was present in this case, and appellant’s assignment of error to the contrary is without merit.
II.
Appellant next contends that the military judge erred in failing to dismiss the charges because of misconduct on the part of Colonel Boyd, the officer exercising special court-martial jurisdiction who convened the Article 32 investigation. Counsel for appellant indicate that Colonel Boyd decided to recommend a general court-martial even before he had received the report of investigation and that he initiated several contacts with appellant after appellant was confined and attempted to interfere with appellant’s relationship with his counsel and to secure information concerning other drug offenders. We find no basis for relief in either accusation.
On the night of appellant’s apprehension, 29 December 1982, Colonel Boyd apparently told the apprehending Naval Investigative Service agent that he was “going to send” the appellant to a general court-martial. In addition, on 16 February 1983, Colonel Boyd made a similar comment to counsel for appellant even though the report of the Article 32 investigation had just been completed and he had not yet had an opportunity to review it. Appellant argues that Colonel Boyd’s “predisposition” to forward the charges for trial by general court-martial without examining the report of investigation indicates a bias which constitutes a departure from the convening authority’s “official capacity.” We concur in the observation of the staff judge advocate in his review of this case that a subordinate convening authority who directs an Article 32 investigation is not required to be absolutely neutral and detached. By ordering such an investigation, he has already determined that the offenses possibly merit a general court-martial. It is the investigating officer who must remain impartial. In this case, Colo *434 nel Boyd was thoroughly familiar with appellant and his past disciplinary problems, including drug offenses, when he made his comment of 29 December 1982 to the Naval Investigative Service Agent. In addition, the record of trial reveals that at the time of his meeting with counsel for appellant on 16 February 1983 Colonel Boyd had already been made aware of the 1 February 1983 recommendation of the Article 32 investigating officer for a general court-martial and had discussed that recommendation with the eventual trial counsel. Appellate Exhibit XIV. On the basis of the evidence before us, we can find no indication that Colonel Boyd did not make a careful and well-reasoned decision in forwarding the charges with a recommendation for trial by general court-martial.
Colonel Boyd also contacted the appellant several times, as did his sergeant major and a Naval Investigative Service agent. The purpose of these contacts was an attempt to obtain information about other individuals involved in the use of drugs. During these contacts, the wisdom of appellant retaining civilian counsel was apparently questioned. The record of trial makes clear, however, that the basis for the discussion concerning civilian counsel was the possible financial impact on appellant and the real need for civilian counsel in addition to the detailed military counsel. There is no evidence that the competence and professionalism of civilian counsel was questioned in these conversations, and in the end appellant continued his relationship with his civilian counsel with no apparent loss of confidence in him. Surreptitious interrogation which seeks to deprive an accused of effective assistance of counsel is condemned by military law. United States v. Dowell, 10 M.J. 36 (C.M.A.1980); United States v. McOmber, 1 M.J. 380 (C.M.A.1976). In this case, however, no statements were made by appellant, no evidence was procured, and no prejudice to the attorney-client relationship ensued.
This assignment of error is also without merit.
III.
Finally, appellant contends that the military judge erred in failing to dismiss the charges because the convening authority had been unlawfully influenced in his referral of the case to a general court-martial by the strong policy pronouncements concerning drug abuse in ALMAR 246/81 and ALNAV 132/81. We do not agree.
While “command influence” is condemned at all levels, policy declarations necessary to good order and discipline are completely proper. The important question in a case such as the one of this appellant is not whether the convening authority gave consideration to the expressed policies of the Commandant of the Marine Corps and the Secretary of the Navy but rather did he understand fully that he had a choice to accept or reject them. United States v. Betts, 12 U.S.C.M.A. 214, 30 C.M.R. 214 (1961). The stipulated testimony of the convening authority in this case (Appellate Exhibit VI) amply demonstrates that this officer fully understood his alternatives and did not believe that because of the policy directives he had no choice but to refer appellant’s case to a general court-martial. He recognized that it was his responsibility to consider each case involving drugs on a case-by-case basis; however, he happened to agree quite properly with the policy that drug trafficking is a dishonorable act which must be dealt with swiftly and effectively.
Unlawful command influence is not present in this case.
IV.
Accordingly, the findings of guilty and the sentence approved on review below are affirmed.