UNITED STATES, Appellee

v

ARCOLA PLUMMER, JR., Private First Class,
.U. S. Army, Appellant

7 USCMA 630, 23 CMR 94

No. 9064

Decided March 1, 1957

 ▬

*First Lieutenant Robert J. Hearon, Jr.,* argued the cause for Appellant, Accused. With him on the brief were *Colonel J. M. Pitzer* and *Major Frank C. Stetson.*

*First Lieutenant James G. Duffy* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *First Lieutenant Robert L. Taylor.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

This case brings up for review the effect of certain statements made by the Staff Judge Advocate in his post-trial review. On his plea of guilty and without the presentation of any evidence, the accused was convicted by a general court-martial of a fourteen-day unauthorized absence and the larceny of $140, in violation of Articles 86 and 121, respectively, 10 USC §§ 886 and 921. The court adjudged a sentence which includes a dishonorable discharge and confinement at hard labor for two years.

The record of trial was initially reviewed by an Assistant Staff Judge Advocate. He noted that the stolen money was recovered within five hours after the theft, and that the accused voluntarily returned to military control to end the period of his unauthorized absence. He also commented on the fact that during two tours of overseas duty, one in Europe and the other in Korea, for which the accused had volunteered, the accused "received excellent on all his character and efficiency ratings." In a personal interview, the accused told him that he had "learned his lesson," and that he desired to return to duty so that he could earn an honorable discharge. Summarizing the clemency considerations, the reviewer said: "Although the accused was convicted of a barracks theft, the facts surrounding the theft are not aggravated. It is believed he [the accused] is a likely candidate for rehabilitation." The reviewer concluded with a recommendation that the execution of the discharge be suspended.

Two days later, the record of trial was further reviewed by the Staff Judge Advocate. He adopted the review of the Assistant Staff Judge Advocate, except for the recommendations. In regard to the latter, he set out his own view of the circumstances of the offenses. In pertinent part he said:

"While civilian courts would no doubt have imposed a less severe sentence, and because of the youth of the accused and no previous civilian criminal record, would probably have suspended the entire sentence, we in the Army cannot take that position with a barracks thief. In my opinion a man who steals 50¢ from a fellow soldier in the barracks has committed a much more serious offense than some civilian who steals $500.00 from some person's house in which he does not live. This is because soldiers must live together and must trust each other. If this trust is broken by one soldier stealing from his fellow soldiers, then there is no room for that individual in the Army, no matter what his record may have been. I do not need to tell you because it is

**631**

a known fact that an unapprehended barracks thief can completely demolish the morale of the unit faster than anything else. This is well known in the Army and it is the custom of the Army to deal severely with a barracks thief. While this view may not be shared by civilian agencies because they do not understand the problems involved, and while the theory may not be understood by our highest appellate agency, nevertheless in this command I strongly recommend that we adhere to elimination of all barracks thieves."

The Staff Judge Advocate recommended that the court-adjudged sentence be approved. His recommendation was followed by the convening authority.

We are appalled at the Staff Judge Advocate's suggestion that neither we, as the supreme appellate tribunal in the military courts-martial system, nor civilian authorities generally, can understand the disciplinary and morale problems of the military establishment. The record so overwhelmingly demolishes that contention that the only response it deserves is reference to the Constitution, which makes the President of the United States the Commander-in-Chief of the armed forces, and which grants to Congress the right to make rules and regulations for the military. United States Constitution, Article I, Section 8, Clause 14; Article II, Section 2. However, we confess to considerable concern at the mere fact that such sentiments still obtain among high-ranking personnel. We are particularly disturbed to find legal officers in sympathy with those views. Presumably at least they read our opinions. And time and again we have demonstrated our awareness of the fact that conditions peculiar to the millitary may require a result different from that in the civilian community. See United States v Petroff-Tachomakoff, 5 USCMA 824, 19 CMR 120; United States v Yunque-Burgos, 3 USCMA 498, 13 CMR 54; United States v Littrice, 3 USCMA 487, 13 CMR 43. We hope that eventually all military personnel, legal and nonlegal, will realize that they have a joint obligation with civilians to shape

military law "as an integral part of American jurisprudence." Feld, Courts-Martial Practice: Some Phases of Pretrial Procedure, 23 Brooklyn Law Review 25, 37 (1956).

Turning to the post-trial review, there can be no doubt that it misinterprets the law. The tenor of the Staff Judge Advocate's statements is that, as a matter of military custom and necessity, a barracks thief must be eliminated from the service, even though the surrounding circumstances are such that "civilian courts . . . would probably . . . [suspend] the entire sentence." In United States v Wise, 6 USCMA 472, 20 CMR 188, we held that in reviewing a court-martial case a convening authority cannot be bound by an inflexible administrative policy. We pointed out that under the Uniform Code and the Manual for Courts-Martial, United States, 1951, an accused is "entitled as a matter of right to a *careful and individualized review* of his sentence at the level of the convening authority." (Emphasis supplied.)

The Government has not attempted to justify the quoted part of the Staff Judge Advocate's review. Instead, it contends, the accused has failed to show affirmatively that the Staff Judge Advocate's recommendation had a definitely measurable impact on the convening authority. That argument has no merit. Prejudice is not measured by a gauge. It is sufficient if there is a fair risk that the convening authority was influenced, through the medium of the post-trial review, by incorrect statements or by improper persons. United States v Massey, 5 USCMA 514, 18 CMR 138; United States v Clisson, 5 USCMA 277, 17 CMR 277; United States v Coulter, 3 USCMA 657, 14 CMR 75. In case of doubt, the doubt must be resolved in favor of the accused. United States v Doherty, 5 USCMA 287, 17 CMR 287. See also United States v McClenny, 5 USCMA 507, 513, 18 CMR 131.

At best, the Staff Judge Advocate's advice here is ambiguous. It can reasonably be construed as saying that, as a matter of law, it would be contrary

to "the custom of the Army" to ameliorate the accused's sentence. If it was so construed by the convening authority, the accused did not receive the benefit of the convening authority's "conscious discretion" on the quantum of punishment that he should approve. United States v Massey, supra, page 523.

The decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General of the Army for transmittal to a general court-martial authority, other than the one who acted upon the initial review, for further proceedings in conformity with Articles 61 and 64, Uniform Code of Military Justice, 10 USC §§ 861 and 864. United States v Papciak, 7 USCMA 412, 22 CMR 202.

Judge FERGUSON concurs.

LATIMER, Judge (concurring in the result) :

I concur in the result.

In United States v Wise, 6 USCMA 472, 20 CMR 188, we stated as follows (page 476) :

"The rationale of all the quoted provisions points clearly to a rule that an accused is entitled as a matter of right to a careful and individualized review of his sentence at the level of the convening authority. It is his first and perhaps best opportunity to have his sentence tempered by mercy and to obtain an additional chance to prove his worth to his service, and his country. A casting aside of the sentence review by a sweeping proclamation that all accused who receive a punitive discharge are to be discharged from the service, regardless of any showing made in their behalf, is not in keeping with that rationale. That view smacks too much of the principle that all military offenders must inflexibly and arbitrarily be tarred with the same brush of dishonorable service."

In this instance, it is sufficient for my purposes to state that the staff judge advocate in his review recommended that the convening authority disregard the law set forth above. By his advice, the expert on the law encouraged the reviewing officer to act as an automaton and eliminate all members of a class of offenders, regardless of individual mitigating or extenuating circumstances. I have no reason to suspect that the reviewing officer did not follow the recommendation and, in my opinion, when incorrect legal principles are used by a staff judge advocate to influence the review, the burden should be shifted to the Government to show they were without persuasive effect.