UNITED STATES, Appellee

v

EARL FIELDS, JR., Private E-2, U. S. Army, Appellant

9 USCMA 70, 25 CMR 332

No. 10,614

Decided March 28, 1958

*Colonel Edward M. O'Connell* was on the brief for Appellant, Accused.
*Lieutenant Colonel John G. Lee* was on the brief for Appellee, United States.

## Opinion of the Court

HOMER FERGUSON, Judge:

This is another in a series of cases which have reached this Court of late involving the correctness of certain advice contained in the staff judge advocate's post-trial review of the record of trial. Because of the inordinate number of cases in which issues of a similar nature have been raised, it is considered advisable here to explore at some length the law applicable to such reviews. We take this action for it is apparent that many erroneous conceptions respecting the requirements, functions and extent of the post-trial review characterize the thinking of some officers involved in this most important aspect of the system of justice established by the Uniform Code of Military Justice.

The only provisions of the Uniform Code of Military Justice relating to the post-trial review are set out in Article 61, 10 USC § 861, in the following language:

"The convening authority shall refer the record of each general court-martial to his staff judge advocate or legal officer, who shall submit his written opinion thereon to the convening authority. If the final action of the court has resulted in an acquittal of all charges and specifications, the opinion shall be limited to

questions of jurisdiction and shall be forwarded with the record to the Judge Advocate General of the armed force of which the accused is a member."

It is at once evident that, except in cases of an acquittal, the *Code* does not undertake to delineate the mandatory requirements of the post-trial review. Under the Articles of War, these requirements were prescribed by the President in the Manual for Courts-Martial,[1] and it is apparent that the framers of the *Code* intended to follow the practice established by the Army over a number of years.[2] The first and most explicit of these directives is that set out in paragraph 370, Manual for Courts-Martial, U. S. Army, 1921, in this language:

". . . The staff judge advocate or one of his assistants will prepare a written review, or report, as circumstances may require, in each case of conviction by general court-martial or military commission. Such review or report is intended primarily to advise the reviewing or confirming authority as to the essential features of the case and as to the action that he should take thereon. Where the evidence in support of each specification upon which the accused is

---

[1] Article of War 46, Act of June 4, 1920, 41 Stat 787; ibid, as amended by Act of June 24, 1948, 62 Stat 627. The Articles for the Government of the Navy made no provision for such a review.

[2] See Hearings before House Armed Services Committee on H. R. 2498, Uniform Code of Military Justice, 81st Congress, 1st Session, page 1177; House Report No. 491, 81st Congress, 1st Session, page 29; Senate Report No. 486, 81st Congress, 1st Session, page 26.

convicted is clear and conclusive and there are no errors or irregularities which may be regarded as affecting the substantial rights of the accused or as invalidating the sentence in whole or in part, a review will not be required, but a report to that effect will be sufficient. When the evidence in support of a specification is weak or conflicting, or where the evidence for the defense tends to weaken the evidence for the prosecution or to disprove the allegations in the specification, a review will be prepared and all the material evidence relating to the specification will be weighed; and the reviewer will state his opinion, both as to the weight of evidence and any error or irregularity that may be involved, and as to whether or not the finding of guilty should be approved, together with his reasons for such opinion. Where the accused has been convicted, however, upon other specifications upon clear and conclusive evidence it is sufficient that the reviewer state that fact with reference to such specifications in the review.

"The review will contain a statement of such errors as may have been committed to the prejudice of the accused in the course of the trial or in the preparation of the record, and all such irregularities as may have affected the validity of the proceedings or sentence. Each of such errors or irregularities will be carefully weighed in the review for the purpose of informing the reviewing authority whether he should or should not, in view of the provisions of the thirty-seventh article of war, hold the sentence invalid or direct a rehearing; and the reviewer will expressly state as to such errors or irregularities whether or not in his opinion the sentence or any part thereof should be held invalid or whether or not in his opinion a rehearing should be directed. When reference is made to any error the page of the record which discloses such error will be cited, and, when testimony is referred to, the name of the witness giving such testimony and the page on which the same is recorded will be cited.

"The judge advocate making a report or review will begin the same by stating the place and dates at which the accused (stating his name and age) was tried, and the sentence that was adjudged, and will then set forth the charges and specifications either verbatim or in substance, as may be thought best, upon which the accused was convicted. After such remarks as may be necessary in view of the above paragraphs of this regulation the officer making the review or report will make specific recommendation as to the sentence, either (a) that the sentence be approved or disapproved in whole, or (b) that it be approved in part, or (c) that a rehearing be directed, giving his reasons for his recommendation in each case; and the report or review will conclude with a draft of the action to be taken by the reviewing authority which the officer making the report or review recommends. (See par. 339.) The report or review will be signed by the officer making the same. If signed by an assistant staff judge advocate, the staff judge advocate will indorse thereon either (a) his approval or (b) his disapproval, with his reasons therefor, and will incorporate in his indorsement of disapproval a draft of the action to be taken by the reviewing authority which he recommends.

"The signed copy of the report or review will be transmitted with the record of trial to the Judge Advocate General."

Although subsequent modifications have abbreviated the foregoing directive, its requirements are still extant. However, a review must now be prepared whether or not the findings are predicated upon "clear and conclusive" evidence.[3]

The current *Manual* prescribes the form and contents of the review in this manner:

[3] See paragraph 87c, Manuals for Courts-Martial, U. S. Army, 1928 and 1949.

". . . The review will include a summary of the evidence in the case, his opinion as to the adequacy and weight of the evidence and the effect of any error or irregularity respecting the proceedings, and a specific recommendation as to the action to be taken. Reasons for both the opinion and the recommendation will be stated." [Paragraph 85*b*, Manual for Courts-Martial, United States, 1951.]

Under the current *Manual* these are the minimum requirements of the review of every trial by general court-martial which has resulted in a conviction.

1. A summary of the evidence;

2. An opinion as to the adequacy and weight of the evidence;

3. An opinion relative to the effect of any error or irregularity (see Article 59, Uniform Code, supra);

4. A specific recommendation as to the action to be taken; and

5. Reasons for both the opinions and the recommendation.

These requirements follow generally the areas of the convening authority's powers over findings and sentence as established by Article 64 of the *Code*, supra, and must be followed in every case, except in those involving a plea of guilty or a judicial confession of guilt. See United States v Duffy, 3 USCMA 20, 11 CMR 20. In the latter situations the reviewer's opinions relative to adequacy and weight of the evidence may be appropriately abbreviated. The extent of the abbreviation will necessarily depend upon the facts and circumstances of the individual record, and will be a matter within the sound discretion of the staff judge advocate or legal officer. See United States v Coleman, 8 USCMA 758, 25 CMR 262.

The five requirements delineated above are not the exclusive requirements of the review. Article 64[4]

affords the convening authority the right to "disapprove a finding or a sentence for any reason." The latitude of this power is most cogently reflected by the following discussion before the House Armed Services Committee while the *Code* was under consideration:

"Mr. BROOKS. He doesn't have to read the record or anything esle [sic]. He can just say disapproved and it is through.

"Mr. LARKIN. That is right. In the normal course of the review of the case he looks to its legality and the establishment of the facts and the appropriateness of' the sentence and he shouldn't approve anything that is wrong or illegal, but he can disapprove it if it is illegal, if it is wrong, and for any other reason.

"Mr. BROOKS. Or for no reason at all?

"Mr. LARKIN. Or for no reason at all.

"Mr. RIVERS. That is right.

"Mr. LARKIN. The classic case that I think General Eisenhower stated in his testimony before your subcommittee last year was that even though you might have a case where a man is convicted and it is a legal conviction and it is sustainable, that man may have such a unique value and may be of such importance in a certain circumstance in a war area that the commanding officer may say 'Well he did it all right and they proved it all right, but I need him and I want him and I am just going to bust this case because I want to send him on this special mission.'

"He has the right to do that. It is that free rein—all of which operates to the advantage of the accused—" [Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, pages 1183–1184.]

We have had occasion in the past to

---

[4] "Art. 64. Approval by the convening authority

"In acting on the findings and sentence of a court-martial, the convening authority may approve only such findings of guilty, and the sentence or such part or amount of the sentence, as he finds correct in law and fact and as he in his discretion determines should be approved. Unless he indicates otherwise, approval of the sentence is approval of the findings and sentence."

consider this discretionary area of authority on the question of findings and sentence. In United States v Massey, 5 USCMA 514, 18 CMR 138, we held that though the results of truth serum and lie detector tests were inadmissible in evidence before a court-martial such results could properly be utilized by a convening authority "who may lawfully disapprove findings or sentence 'for *any* reason.' " Of course, evidence outside the record of trial may not be used to approve a court-martial's finding of guilt. United States v Duffy, supra. The reason for the distinction is obvious in the light of Congressional intent. On the question of appropriateness of sentence, involving another area of broad discretion, we have held that the convening authority is unhindered as to the subjects he may consider. United States v Coulter, 3 USCMA 657, 14 CMR 75. Again, he may not consider matters adverse to the accused found outside the record of trial without first affording him the opportunity to rebut or explain such matters. United States v Griffin, 8 USCMA 206, 24 CMR 16; cf. United States v Lanford, 6 USCMA 371, 20 CMR 87; United States v Payne, 9 USCMA 40, 25 CMR 302; United States v Vara, 8 USCMA 651, 25 CMR 155.

Inclusion of matters related wholly to the discretionary areas of the convening authority's powers depends upon the facts of each case. To require, as an essential of due process, a reference to the power to disapprove findings for "*any* reason," when no reason exists within the staff judge advocate's knowledge, would be a ritualistic approach to a matter which the framers of the *Code* demanded be left as unfettered as possible "to the end that substantial justice may be done." Cf. United States v Dean, 7 USCMA 721, 23 CMR 185. Paragraph 87c, Manual for Courts-Martial, supra. Wide discretion must be afforded staff judge advocates and legal officers in their determination of the matters to be included on these questions. Of course, the exercise of this discretion is a proper subject of consideration upon appeal.

With these general principles in mind, we proceed to our consideration of the facts of the case at bar.

The accused was tried by general court-martial upon two specifications each alleging larceny of a camera of a value of $60.00, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. Admissible evidence tended to show the circumstances of each loss, the value of the cameras, and the discovery thereof in a field cargo pack which the accused had put in a mess trailer. Questioned about his possession of the cameras immediately after their discovery, the accused denied taking one, expressing the belief that someone had put it in his pack. Concerning the second camera, he declared he had found it, knew the identity of the owner, but, on the theory of "finders-keepers" resolved to retain it. The accused elected to remain silent at trial and no evidence was adduced by the defense. The court-martial convicted him of both offenses and sentenced him to dishonorable discharge, total forfeitures, and confinement at hard labor for two years.

In reviewing the record of this trial, the staff judge advocate summarized the evidence, and discussed its applicability to the findings in the following language:

"4. DISCUSSION

"a. *Specification 1 (Larceny of camera from Pfc DeWayne Moore).*

"The corpus delicti was proved by the victim's testimony (R 7). Value of the stolen property was stipulated to be $60.00 (Pros. Ex. 5) as alleged. The accused having admitted to the CID investigator that he took two cameras and that Moore's camera was found in accused's cargo bag without a credible explanation therfor [sic] warranted the court in finding the accused guilty of this specification. *As the sole judges of the facts, the court had the right to disbelieve and reject the accused's denial of knowledge as to the origin of his possession.*

**75**

"*b. Specification 2 (Larceny of camera from Pfc Ernest L. Russell).*

"The corpus delicti was established by the testimony of the victim (R 17. 18). Value of the stolen property was stipulated to be $60.00 as alleged (Pros. Ex. 5). The property in question having been found in the accused's personal belongings on the day after it was stolen and the accused having admitted that he knew that it belonged to the victim but claimed it under the theory of 'finders keepers' warranted the court in finding that the accused intended to deprive the owner of it permanently. The elements of the offense having been proved, the findings were justified." [Emphasis supplied.]

As we have indicated above, there must be included in every post-trial review the staff judge advocate's opinion as to the adequacy and weight of the evidence, supported by his reasons for such opinion. United States v Withrow, 8 USCMA 728, 25 CMR 232; United States v Flemings, 8 USCMA 729, 25 CMR 233. This is designed to guide the convening authority in his determination of correctness of the findings "in law and fact." (See Article 64, *Code,* supra.) The terms "adequacy" and "in law" refer to the legal sufficiency of the evidence. The terms "weight" and "in fact" pertain to the requirement that the convening authority be satisfied of the accused's guilt "beyond a reasonable doubt." United States v Grice, 8 USCMA 166, 23 CMR 390.

The instant review clearly informed the convening authority that the evidence was legally sufficient to support the findings. Whether or not it satisfies the requirement of an opinion as to factual sufficiency may be determined by a review of a few of our recent decisions on similar questions.

In United States v Grice, supra, it appeared that the staff judge advocate advised the convening authority that since the court-martial had seen and heard the witnesses and resolved a factual issue against the accused, he (the staff judge advocate) "may not

disagree with that decision." We considered such advice erroneous because it indicated that the staff judge advocate had considered himself bound by the findings of the court-martial on questions of fact. Since the staff judge advocate has no authority or function but to advise his commander, we concluded that the advice was tantamount to informing him that he too was bound by the court's findings. In the course of our opinion we said:

". . . While it is true that the convening authority should generally recognize that 'the trial court saw and heard the witness' it is equally true that he is empowered and required to judge the credibility of witnesses, determine controverted questions of fact, and otherwise apply the trial level test of sufficiency rather than the more restrictive test reserved to appellate tribunals. He must be satisfied in his action that the accused is guilty *beyond a reasonable doubt.*"

In United States v Johnson, 8 USCMA 173, 23 CMR 397, the staff judge advocate, after discussing the evidence presented, said, "where as here there is sufficient legally admissible evidence to support their findings, it should not be disturbed." We ordered a new review in that case because the quoted language was capable of being interpreted as applying the stricter appellate rule of legal sufficiency involving sufficiency as a matter of law and not of fact. Again, in United States v Katzenberger, 8 USCMA 497, 24 CMR 307, where the defense of alibi was raised, this comment of the staff judge advocate required reversive action: "Also, the court saw and heard the witnesses (a privilege not accorded reviewing authorities); thus, the court's determination should not be disturbed unless the denial of the accused as to the allegation and the testimony of the witness supporting his alleged movements is such that no reasonable person could disbelieve it."

The comment of the staff judge advocate in the instant case that: "As the sole judges of the facts, the court had the right to disbelieve and reject the

76

accused's denial of knowledge as to the origin of his possession," is no less calculated to mislead the convening authority. As in the cases discussed, it is tantamount to advising him that he was bound by the court's finding. This was error and the existence of prejudice is equally clear. The convening authority should be made aware that in order to approve the court-martial's findings he must be satisfied of the accused's guilt beyond a reasonable doubt. Article 64, supra, as we have shown, affords an accused the benefit of an independent assessment of the facts by one in whom the Congress has reposed plenary powers in this area. The very latitude of these powers demonstrates the importance to an accused of their correct exercise. Under these provisions he receives a redetermination of all factual issues raised before the court-martial. Here he was deprived of this redetermination and prejudice follows as a matter of law.

The decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General of the Army for submission to a competent reviewing authority for further proceedings under Articles 61 and 64, Uniform Code of Military Justice, 10 USC §§ 861 and 864.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

I have no desire to disagree with my colleagues on the form and content of a staff judge advocate review for by this time I suspect the Services have modified their form to meet the standards suggested in prior decisions. Neither do I seek to question the fact that improvements may have resulted from our published views. As a matter of fact, I could go on and say that the inclusion of many other bits of information not mentioned by the Court and a more accurate use of words and phrases would improve the product. But that is not the problem as I see it, for we are enjoined by Congress not to reverse a case unless we find that the error, if any, has materially prejudiced

a substantial right of an accused. When that rule is used in this post-trial area, several general principles must be considered. An accused has no inalienable right to a particular form of review and all he is entitled to is one which meets the basic requirement of the *Code* and the *Manual*. Those Services which have taken upon themselves the obligations to give the accused more than is required by law do not err by failing to tailor their gratuities to meet our standards.

In this and in an allied line of cases, we started with the principle that when the contents of the pretrial advice or post-trial review would mislead the convening authority then there was prejudice to an accused. In those instances we concluded to remove all possibilities that the convening authority acted on misadvice by requiring a new review. United States v Massey, 5 USCMA 514, 18 CMR 138, and United States v Greenwalt, 6 USCMA 569, 20 CMR 285. My associates and I agree in those two instances but I began to part company with them when they moved on to interpret standard legal language employed by staff judge advocates to be misleading—particularly where the terms used had been in vogue for many years and we had affirmed hundreds of cases employing the same expressions. The language was stereotyped and the reviews just did not become misleading, confusing, or erroneous overnight. See United States v Grice, 8 USCMA 166, 23 CMR 390; United States v Johnson, 8 USCMA 173, 23 CMR 397; and United States v Jenkins, 8 USCMA 274, 24 CMR 84.

Now as to the position I take in this particular post-trial area. Pretermitting any collateral issues, I believe that if the many opinions I have penned on this subject are considered collectively, these general rules appear. When we interpret a review we should consider it by its four corners. For example, United States v Palacios, 8 USCMA 613, 25 CMR 117, dissenting opinion; United States v Newman, 8 USCMA 615, 25 CMR 119, dissenting opinion. When that sort of consideration is employed, if it appears probable that the reviewing officer in weighing the

evidence to support the findings might reasonably be misled into using an evidentiary scale short of the one specified by the *Code*, then a new review should be ordered. If, on the other hand, the probability of his using a short weight is nonexistent, remote, or purely conjectural, then further proceedings are not required. Finally, in the usual situation, when an accused asserts post-trial error the burden is on him to show prejudice. He fails in that regard when we must speculate that an improper yardstick was employed.

In the instant case, the accused was convicted of the larcenies of two cameras which were found secreted with his personal belongings. In a pretrial statement, after proper warning that he was suspected of the theft of six cameras, the accused admitted taking two but, in connection with one of the two involved in these charges and specifications, he contended that he did not know it was in his pack and that someone other than himself must have placed it there. He did not testify, and his explanation was before the court-martial only because the Government introduced it as part of his admissions. In his review, the staff judge advocate discussed the crimes separately, and it was in connection with his comments on the sufficiency of the evidence to prove each element of one larceny that he made the quoted statement. I quote the full paragraph:

"The corpus delicti was proved by the victim's testimony (R 7). Value of the stolen property was stipulated to be $60.00 (Pros. Ex. 5) as alleged. The accused having admitted to the CID investigator that he took two cameras and that Moore's camera was found in accused's cargo bag without a credible explanation therfor [sic] warranted the court in finding the accused guilty of this specification. As the sole judges of the facts, the court had the right to disbelieve and reject the accused's denial of knowledge as to the origin of his possession."

Certainly, the statement embodies the well-accepted principle of law that triers of fact have the right to believe or disbelieve the testimony of any witness.

Elsewhere in the report, the reviewer gives his opinon on the weight and sufficiency of the evidence on all offenses, for he states that the competent evidence of record establishes that all findings of guilty are correct in law and fact. If they are of that quantum and quality, they must be sufficient to show guilt beyond a reasonable doubt.

Under these circumstances I see no reason for departing from the concepts to which I have adhered previously, and when they are applied in this instance I do not find grounds for reversal.

I would affirm the decision of the board of review.