UNITED STATES, Appellee

v

PHILLIP PRINCE, Seaman Apprentice,
U. S. Navy, Appellant

16 USCMA 314, 36 CMR 470

No. 19,341

August 12, 1966

*Major Ernest B. Wright,* USMC, argued the cause for Appellant, Accused.

*Lieutenant Robert A. Briggs,* USNR, argued the cause for Appellee, United States. With him on the brief was *Colonel J. E. Hanthorn,* USMC.

FERGUSON, Judge:

This case involves a directive promulgated by the Navy Department in connection with the retention of thieves and others convicted of crimes involving moral turpitude in the naval service. Less direct than those involved in United States v Estrada, 7 USCMA 635, 23 CMR 99, and United States v Fowle, 7 USCMA 349, 22 CMR 139, it nevertheless constitutes an improper circumscription of supervisory authorities' statutory powers and, as such, must fall.

The accused was tried by special court-martial and convicted of forgery and wrongful possession of another's identification card, in violation of Uniform Code of Military Justice, Articles 123 and 134, 10 USC §§ 923, 934, respectively. He was sentenced to bad-conduct discharge, forfeiture of $62.60 per month for six months, confinement at hard labor for six months, and reduction to the lowest enlisted grade. Intermediate appellate authorities affirmed, and we granted accused's petition for review on the issue whether the supervisory authority's action was improperly limited by the provisions of section 0120a, Manual of the Judge Advocate General, Department of the Navy.

That section provides pertinently as follows:

"MATTERS TO BE INCLUDED IN ACTION ON SPECIAL COURTS-MARTIAL BY GENERAL COURT-MARTIAL CONVENING AUTHORITIES

"a. *Suspension of sentences.*—If the general court-martial convening authority takes action to suspend any portion of a sentence involving a bad-conduct discharge for a period in excess of six months or, in cases involving confinement, in excess of six months beyond the date of release from confinement, he shall state his reasons therefor in his action on the record. *In cases involving convictions of larceny or other offense or offenses involving moral turpitude, if the general court-martial convening authority suspends the puni-*

tive discharge for any period he shall include in his action on the case a statement of his reasons therefor."* [Emphasis supplied.]

Code, supra, Article 64, 10 USC § 864, provides:

"In acting on the findings and sentence of a court-martial, the convening authority may approve only such findings of guilty, and the sentence or such part or amount of the sentence, as he finds correct in law and fact and as he in his discretion determines should be approved. Unless he indicates otherwise, approval of the sentence is approval of the findings and sentence."

Code, supra, Article 65, 10 USC § 865, makes the foregoing Article applicable to review by the supervisory authority of special courts-martial cases, in which a bad-conduct discharge is included in the approved sentence, for it directs that officer to examine such records "in the same manner as a record of trial by general court-martial."

The Government concedes these judicial review proceedings are governed by the mentioned statutes but contends that action on the sentence, though discretionary in nature, must be based on a reasoned approach, *i. e.,* for a legal reason. Hence, it urges the section of the Manual of the Judge Advocate General, quoted supra, does not at all impinge upon the supervisory authority's freedom to suspend sentences, but merely requires him to set forth grounds for the exercise of his discretionary power. We have long since rejected this narrow construction of Code, supra, Article 64.

In United States v Massey, 5 USCMA 514, 18 CMR 138, we flatly declared the Article in question empowers initial appellate authorities to "lawfully disapprove findings or sentence 'for *any* reason.'" *Massey,* supra, at page 521. In reaching that conclusion, we pointed out the Article's legislative history at length, declaring, at page 520:

"Article 64 of the Uniform Code of Military Justice provides that 'In

**315**

acting on the findings and sentence of a court-martial, the convening authority shall approve only such findings of guilty, and the sentence or such part or amount of the sentence, as he finds correct in law and fact and as he *in his discretion* determines should be approved.' (Emphasis supplied.) The legislative history of the Code makes it clear beyond doubt that the words 'in his discretion' were intended to grant to the convening authority an exceedingly broad power to disapprove a finding or a sentence. Originally these words were absent from the Code's draft. However, from the first the official commentary on the proposed Article 64 of the Code stated that the convening authority 'may disapprove a finding or a sentence for *any* reason.' (Emphasis supplied.). Hearings before the House Committee on Armed Services, 81st Congress, 1st Session, on H. R. 2498, pages 1182–1183. Mr. Larkin, one of the Code's principal draftsmen, explained that Article 64 'was intended to give him (the convening authority) a free hand in doing anything he wants for any reason in cutting down the sentence or in disapproving.' However, certain members of Congress feared that the phrasing of the Article—as it then stood—was insufficient to make this fully comprehensible. Certain of the colloquy concerning the draftsmen's intention is highly pertinent to the present case:

'MR. BROOKS. He (the convening authority) doesn't have to read the record or anything esle [sic]. He can just say disapproved and it is through.

'MR. LARKIN. That is right. In the normal course of the review of the case he looks to its legality and the establishment of the facts and the appropriateness of the sentence and he shouldn't approve anything that is wrong or illegal, but he can disapprove it if it is illegal, if it is wrong, and for any other reason.

'MR. BROOKS. Or for no reason at all?

'MR. LARKIN. Or for no reason at all.

'MR. RIVERS. That is right.

'MR. LARKIN. The classic case that I think General Eisenhower stated in his testimony before your subcommittee last year was that even though you might have a case where a man is convicted and it is a legal conviction and it is sustainable, that man may have such a unique value and may be of such importance in a certain circumstance in a war area that the commanding officer may say "Well he did it all right and they proved it all right, but I need him and I want him and I am just going to bust this case because I want to send him on this special mission." '
(House Hearings, supra, page 1184.).

With the preceding discussion in mind, the words 'in his discretion' were inserted. House Hearings, supra, page 1266. No sort of similar phrase appears in Articles 66 or 67, which provide for review by a board of review and by this Court."

In United States v Doherty, 5 USCMA 287, 17 CMR 287, we likewise pointed out the unfettered discretion of a convening authority to remit or suspend a bad-conduct discharge under the provisions of Code, supra, Article 64, expressly stating "he is free to exercise his own judgment as to whether the sentence, as he approves it, is excessive and inappropriate." *Doherty,* supra, at page 295. Throughout the years, we have steadfastly adhered to this principle. See United States v Fields, 9 USCMA 70, 25 CMR 332; United States v Webster, 9 USCMA 615, 26 CMR 395; and United States v Betts, 12 USCMA 214, 30 CMR 214.

Turning to the directive itself, the United States next argues that it does not in fact circumscribe the supervisory authority's discretion in providing that "he shall include in his action on the case a statement of his reasons" for suspending a punitive discharge in "cases

involving convictions of larceny or other offense or offenses involving moral turpitude." In so contending, it adverts to our decision in United States v Lanford, 6 USCMA 371, 20 CMR 87, in which we noted our approval of paragraph 89c of the Manual for Courts-Martial, United States, 1951, providing that the convening authority *may* set forth reasons for the action which he takes in disapproving court-martial sentences. As we stated there, the Government here again urges a declaration of the convening authority's reasons for suspending a punitive discharge may prove helpful both to the accused and to the United States at later stages in the case's appellate journey. The *Lanford* decision, however, does not support the argument here presented.

First, as we expressly noted in that case, the Manual, supra, does not require the statement of reasons for suspending action. It declares, in paragraph 89c(4):

".  .  . The reasons for the approval, execution, or suspension of all or any part of a sentence *need not be stated in the action*." [Emphasis supplied.]

The directive before us, however, requires such reasons to be set forth. Hence, at once, we find the Manual of the Judge Advocate General provision at odds with the Presidential regulation on the subject. Cf. United States v Smith, 13 USCMA 105, 32 CMR 105. The difference between the permissive language of the Manual for Courts-Martial, supra, and the mandatory "shall" of the Judge Advocate General's publication is apparent. Cf. United States v Weems, 11 USCMA 652, 29 CMR 468.

Moreover, the Government's contention loses all force when it is considered the directive is limited to cases "involving convictions of larceny or other offense or offenses involving moral turpitude." The allegation that setting forth reasons for suspending a sentence would be of benefit in later actions on the case might be of some relevance if applied to all courts-martial convictions. When it is limited, however, to cases of larceny and other offenses involving moral turpitude, the desire to limit the exercise of a convening or supervisory authority's discretion is plainly apparent, for the burden is then cast upon him to explain, in a limited category of offenses, an action which the Congress has said he is freely entitled to take. United States v Doherty, supra; United States v Fields, supra.

Indeed, the situation is not unlike that in Winston v United States, 172 US 303, 43 L ed 456, 19 S Ct 212 (1899). In that case, a statute permitted the jury to qualify its verdict in rape and murder cases by providing for no capital punishment. The jury was instructed it might not do so unless there were mitigating circumstances. The instruction was held prejudicially erroneous, for it required the jury to have a reason for exercising a power of clemency belonging, under the statute, exclusively to it. In like manner, the supervisory authority's unfettered discretion is here chained by the mandatory provision that he set forth reasons for suspending a punitive discharge in larceny cases and others involving offenses of moral turpitude.

In reaching this conclusion, we necessarily must consider the services' traditional policy against retention of those convicted of thievery and similar crimes. United States v Fowle, supra; United States v Estrada, supra; United States v Plummer, 7 USCMA 630, 23 CMR 94; United States v Littrice, 3 USCMA 487, 13 CMR 43. Undoubtedly, such personnel may frequently prove untrustworthy or, indeed, in most cases, be eminently suitable candidates for separation. At the same time, there is nothing so inherently wrong with these offenders that justifies branding them as unsuitable for restoration to duty as a matter of law. It was to a convicted thief that Jesus remarked, " 'Truly, I say unto you, today you will be with me in Paradise.' " Luke 23:43. Surely, others may grant a lesser degree of mercy without justifying their clement attitude. In any event, as Congress has provided, it is the convening authority

**317**

who must make the determination, unbound by any strictures as to his reaching the conclusion a particular offender is worthy of another opportunity to serve. In consequence, we hold section 0120a, Manual of the Judge Advocate General, to be in derogation of both Code, supra, Article 64, and Manual, supra, paragraph 89c(4). As such, it must fall. United States v Smith, supra.

Finally, the Government, turning to the question of prejudice, urges there is no showing in this case the supervisory authority intended to consider suspension of the discharge. Unlike the Government, we cannot speculate, in light of the directive, as to the reasons for his action in affirming the adjudged sentence. Cf. United States v Betts, United States v Webster, both supra. The regulation required him to have a reason for taking such action, when, in law, no such prerequisite is required. See United States v Doherty, Winston v United States, both supra. There is at least a fair risk the question of suspension was, because of section 0120a, not properly passed on below. No more is required, and we must, therefore, remand the case for a new post-trial review in which the matter may be considered without regard to the departmental directive. It is so ordered.

The decision of the board of review is reversed and the record of trial is returned to the Judge Advocate General of the Navy, for direction of further proceedings by the convening authority under Code, supra, Article 64.

Chief Judge QUINN and Judge KILDAY concur.