UNITED STATES, Appellee

v

CLIFFORD L. DIPIETRANTONIO, Airman Basic,
U. S. Air Force, Appellant

16 USCMA 386, 37 CMR 6

No. 19,520

November 10, 1966

*Captain Frank W. Lane, Jr.*, argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph Buchta*.

*Lieutenant Colonel Thomas J. Connolly* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis*.

## Opinion of the Court

KILDAY, Judge:

Appellant was tried and convicted by a general court-martial on December 16, 1965, at Scott Air Force Base, Illinois, of two specifications of forgery, eight specifications of uttering checks without having sufficient funds, and one specification of larceny, in violation of Articles 123, 123a, and 121, Uniform Code of Military Justice, 10 USC §§ 923, 923a, and 921, respectively. The sentence imposed consisted of a dishonorable discharge, total forfeitures, and confinement at hard labor for three years. Intermediate appellate authorities thereafter approved both the findings and sentence.

This Court is now called upon to determine whether or not the review of the staff judge advocate is fatally defective. This issue was formed in the following fashion.

In December 1965, accused endorsed the name of "James H. Sloan" to a check having the value of $26.00. He cashed this instrument utilizing an identification card belonging to an individual of the same name. Sloan, the record of trial reflects, had been discharged from the Air Force at Scott Air Force Base earlier that very month. In processing for his return to civilian life he had turned in his identity card. Pertinent Air Force records should have—but did not—disclose its destruction. Petitioner worked in the Base Central Clearing Office where he had ready access to all such cards turned in for disposal.

The record further reflects that Air-

man Dipietrantonio had, on other occasions, uttered eight additional checks drawn on the First National Bank of Belleville, Scott Air Force Base, Illinois, and that all were ultimately returned dishonored. While a bank cashier admitted that petitioner had called to discuss the opening of an account with a $1,000.00 check and although petitioner's barracks chief had seen the accused in possession of such a check, bank records failed to show any account under petitioner's name.

With petitioner's conviction, the record of trial was submitted for review to the convening authority (Article 60, Uniform Code of Military Justice, 10 USC § 860). As required by Article 61, Uniform Code of Military Justice, 10 USC § 861, the staff judge advocate prepared his written opinion thereon.

Incorporating the facts of the case in his review, this officer proceeded to list the elements of the offenses. In concluding that guilt as to all charges and specifications had been more than adequately shown, he observed with regard to the specifications under Charge I:

". . . The element of intent may be proven by circumstantial evidence, and is further satisfied by the presumption, in law, that a person is presumed to intend the natural consequences of any act purposely done by him."

As to the specifications under Charge II, the comment was made:

". . . The element of intent to defraud is satisfied by the presumption, in law, that a person intends the natural consequences of any act purposely done by him. Further, the failure of the accused to redeem the checks within five days after notice of their dishonor is prima facie evidence of his intent to defraud and of his knowledge of insufficient funds in or credit with the bank."

The staff judge advocate subsequently reminded his superior that the latter was empowered to weigh the evidence, judge the credibility of witnesses and determine controversial questions of fact.

Basically, it is the contention of the defense that the staff judge advocate has failed to define the term "presumption" as distinguished from the term "inference" and that erroneous and indiscriminate use of the former in the review constitutes plain error. Prejudice is said to result from the failure to make it unmistakably clear to the convening authority that he was called upon to sift and weigh the evidence. Indeed, according to the defense, it was more than possible that the convening authority was led to believe that a permissive inference could destroy the presumption of innocence.

Government counters with the argument that use of the word "presumption" is not in itself error for the advice as a whole adequately provided the convening authority with tools to apply the staff judge advocate's advice correctly.

We have ofttimes considered the hazards that flow from the unrestrictive use of such terms as "presumption," "presumption in law," and "inferences." For the most part our concern has been directed to that area of the trial proper covering instructions by the law officer. In United States v Ball, 8 USCMA 25, 30, 23 CMR 249, we admonished that:

". . . Insofar as the term 'presumption' refers to justifiable inferences the members of the court-martial may draw from the facts, it is quite properly before the triers of fact. When the term is used to describe 'presumptions of law' it is not properly before the members of the court-martial except in instructing the court that they are bound by the legal conclusion to be drawn from facts proved. Of course, this last-mentioned type is not a true 'presumption' but is a rule of law grown out of an earlier presumption."

In sum, we adopted the view announced in paragraph 138a, Manual for Courts-Martial, United States, 1951, that those presumptions that were justifiable inferences were properly the subject of instructions to the court, but only in terms of "infer-

ences." United States v Crowell, 9 USCMA 43, 25 CMR 305; United States v Houghton, 13 USCMA 3, 32 CMR 3.

We have said that the use of the word "presumption" is not of itself prejudicial error; that we must "look to the four corners" of the instruction to determine instructional adequacy (United States v Miller, 8 USCMA 33, 23 CMR 257; United States v Jones, 10 USCMA 122, 27 CMR 196); and, that where "the court-martial is given adequate tools to apply the instructions on presumptions correctly, there is no error." United States v Ball, supra.

Post-trial reviews are subject to the same preciseness. There is, however, this fundamental difference. Prior to the findings of the court-martial an accused is clothed in a presumption of innocence. His fate rests in the hands of court members who must resolve the factual issue of innocence or guilt within the guidelines imposed by way of the law officer's instructions. However, when before the convening authority, the petitioner also carries the imprint of a conviction in relation to the question of legal sufficiency. The presumption of innocence is related only to factual sufficiency. Compared to the court members, the convening authority carries a more varied burden of responsibility, being required to find both legal and factual sufficiency.

Article 64, Uniform Code of Military Justice, 10 USC § 864, provides that when acting on the findings and sentence, the convening authority· approves only such findings of guilt as "he finds correct in law and fact." The post-trial reviewer is also bound by this standard; i.e., he must apply the same standards employed by his superior. United States v Withrow, 8 USCMA 728, 25 CMR 232; United States v Grice, 8 USCMA 166, 23 CMR 390. Indeed, paragraph 85b, Manual for Courts-Martial, United States, 1951, requires it. Moreover, the convening authority may disapprove the finding and sentence for any reason, United States v Prince, 16 USCMA 314, 36 CMR 470.

Judge Ferguson considered this

Manual provision in United States v Fields, 9 USCMA 70, 25 CMR 332, when he asserted that requirements for review are (1) a summary of the evidence, (2) an opinion as to the adequacy and weight of the evidence, (3) an opinion relative to the effect of any error or irregularity, and (4) a specific recommendation as to the action to be taken and reasons for both the opinions and recommendations. To offer less may well be prejudicial error. For example, were but the single aspect of legal sufficiency considered, reversal would necessarily follow. United States v Pharis, 9 USCMA 219, 25 CMR 481; United States v Howes, 9 USCMA 78, 25 CMR 340; United States v Coonley, 9 USCMA 256, 26 CMR 36.

Cast in this light we are convinced that the staff judge advocate, in using the terms involved, has here done nothing more than to make a legal assessment of the prosecution's case.

This situation is to be distinguished from that concerning the review as to factual sufficiency. In the latter instance it is the evidence and the inferences relative thereto that must satisfy the convening authority as to proof of guilt beyond a reasonable doubt. In this connection it must be noted that the staff judge advocate quite properly drew the convening authority's attention to his responsibilities in this latter area. Thus, from this division of concept, it is quite clear that in the case at hand the staff judge advocate's use of the term "presumption in law" was limited to a discussion of legal sufficiency.

Nevertheless, we have in the past described this term as the slipperiest member of its family. United States v Ball, supra. In view of the fact that the convening authority must, like the court member, assess the evidence as to factual sufficiency, use of such a term is to court prejudicial error. However, because such harm has not here occurred, we affirm the decision of the board of review.

Chief Judge QUINN and Judge FERGUSON concur.