UNITED STATES, Appellee

v

HORACE BENNETT, Sergeant, U. S. Air Force, Appellant

18 USCMA 96, 39 CMR 96

No. 21,284

January 17, 1969

*Major William H. Seckinger* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph E. Krysakowski* and *Major Frank W. Lane, Jr.*

*Major Robert W. Vayda* argued the cause for Appellee, United States. With him on the brief was *Colonel James R. Thorn.*

## Opinion of the Court

FERGUSON, Judge:

Despite his pleas to the contrary, the accused was convicted by a special court-martial of one specification of

simple assault and one specification of assault with a dangerous weapon, in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928. He was sentenced to a bad-conduct discharge, confinement at hard labor for three months, forfeiture of $140.00 per month for a like period, and reduction to the grade of E–1. The convening authority reduced the amount of the forfeiture to $90.00 per month and the supervisory authority reduced the period of confinement and forfeitures to two months each. A board of review approved the findings and sentence as reduced.

We granted review to consider whether:

I. The officer exercising general court-martial jurisdiction was misled in the Acting Staff Judge Advocate's review that he could not modify the sentence to permit rehabilitation.

II. The president of the court incorrectly instructed the court as to the consideration that should be given to deposition testimony.

The facts are not in dispute and have no direct bearing on the issues involved. It will suffice to note that the Government's evidence consisted of the testimony of one witness (the victim of the offense of simple assault), the deposition of another, a stipulation as to the expected testimony of a third witness, and a knife, purportedly dropped by the accused after the assaults. The defense presented no evidence on the merits.

I

In his review for the officer exercising general court-martial jurisdiction, the Acting Staff Judge Advocate advised that officer that the Chaplain, the Assistant Noncommissioned Officer in Charge of the Dover Detention Facility, and the Prisoner Disposition Board, convened at Dover Air Force Base, had recommended that the accused be sent to the retraining facility at Lowry Air Force Base, Colorado. The Chaplain had also recommended that the bad-conduct discharge be set aside. In addition, two of the members of the court recommended that "clemency and rehabilitation be extended to the accused." In commenting thereon, the Acting Staff Judge Advocate's report reads as follows:

"The recommendations of the clemency evaluations make a persuasive argument for designation of the 3320th Retraining Group as a place of confinement. Unfortunately the accused lacks sufficient remaining time in confinement to make him eligible for the program (par. 6–9f, AFM 125–2).

"Viewing the case in its totality, I believe that the sentence as adjudged, modified by the convening authority, and recommended for modification herein is both just and clement and I do not recommend clemency."

Thereafter, this officer recommended that the confinement and forfeitures portion of the sentence be reduced to two months each. As noted above, this recommendation was followed.

Paragraph 6–9, Air Force Manual 125–2, cited by the Acting Staff Judge Advocate, provides in pertinent part that:

"6–9. Assignment to Retraining Groups:

"a. Prisoners considered for assignment to a retraining group must be selected on an individual basis after careful evaluation. *Recommendations of experienced confinement facility personnel are significant.* Officer or noncommissioned officer graduates of the Institute of Correctional Administration are especially well qualified to make such evaluation.

.     .     .     .     .

"f. So that the maximum amount of retraining can be conducted, prisoners who meet the selection criteria will be transferred *immediately after their sentences have been initially promulgated.* However, at least 60 days to minimum release date must be remaining in their sentences at the time of their arrival at a retraining group." [Emphasis supplied.]

The accused was tried and convicted

at Dover Air Force Base, Delaware, on March 12, 1968, and confined in the local facility on the same date. The clemency recommendations were dated March 15, 18, and 26. The Acting Staff Judge Advocate's review was dated April 15th and the officer exercising general court-martial jurisdiction took action the following day.

Appellate defense counsel concede that at the time the officer exercising general court-martial jurisdiction took his action, April 16, 1968, the accused had only fifty-six days remaining on the adjudged sentence of three months confinement at hard labor.[1] They contend, however, that the Acting Staff Judge Advocate erred in not calling attention to the fact that the supervisory authority had the power to commute the bad-conduct discharge to a period of confinement (United States v Brown, 13 USCMA 333, 32 CMR 333), thus qualifying the accused for the program at the retraining group as recommended.

Government appellate counsel argued that there was no error in the advice, for the accused did not in fact have the requisite time remaining to be served in order to qualify for the retraining program; that the Acting Staff Judge Advocate was free to express his own personal opinion concerning the quantum of punishment and the rehabilitative risk of an accused; that the supervisory authority was not misled but was clearly advised in another portion of the report of his broad discretionary powers in the matter of approving the sentence; and that to hold it necessary that the advice recite in detail the myriad alternative actions available to accommodate each individual recommendation for clemency would lead not only to confusion but also might very well open the door to error.

In the appellate process, the post-trial review and the action of the convening (supervisory) authority is oftentimes the most critical step of all because of the broad powers granted this authority by Article 64, Code, supra. United States v Wilson, 9 USCMA 223, 26 CMR 3; United States v Fields, 9 USCMA 70, 25 CMR 332. See also United States v McElwee, 16 USCMA 586, 37 CMR 206; United States v Prince, 16 USCMA 314, 36 CMR 470. It is while at this level that an accused stands the best opportunity of having his sentence tempered by mercy and to obtain an additional chance to prove his worth to his service and his country. United States v Wise, 6 USCMA 472, 20 CMR 188. Since the convening authority in large part depends upon the assistance of his legal advisor (Articles 60 and 61, Code, supra) in this regard, the post-trial review is of vital importance. United States v Grice, 8 USCMA 166, 23 CMR 390; United States v McElwee, supra.

We have oftentimes spoken at length with reference to the responsibility of the staff judge advocate or legal advisor in the preparation of the post-trial review. For the purpose of this opinion, we refer the interested reader to Tedrow, Digest, Annotated and Digested Opinions, U. S. Court of Military Appeals, Staff Judge Advocate (Staff Legal Officer), Post Trial Review, pages 942–951. It will suffice to note that while the staff judge advocate may express his personal opinion with regard to clemency (United States v Guinn, 12 USCMA 632, 31 CMR 218), his advice must be clear and unambiguous (United States v Papciak, 7 USCMA 412, 22 CMR 202), and he must not mislead the convening authority (United States v Plummer, 7 USCMA 630, 23 CMR 94).

To the extent that he informed the officer exercising general court-martial authority that the "recommendations of the clemency evaluations make a persuasive argument for designation of the 3320th Retraining Group as a place of confinement," but "[u]nfortunately the accused lacks sufficient remaining time in confinement to make

[1] Counsel noted that had some way been found to expedite the completion of this stage of the appellate process by some five days, this ineligibility problem could have been avoided.

him eligible for the program (par. 6–9f, AFM 125–2)," the Acting Staff Judge Advocate *correctly* fulfilled his function. However, his use of the word "unfortunately" is of concern to us for the meaning is not clear. If he meant, thereby, as urged by the defense, that the supervisory authority had no alternative but to decline to follow the recommendations for rehabilitation, he was in error, for a proper authority may commute a punitive discharge to some lesser sentence, including additional confinement and forfeitures. United States v Brown, supra. Had this been done, the accused would have qualified for retraining under AFM 125–2, supra. On the other hand, if he intended to convey the impression that were the situation otherwise (more than sixty days confinement remaining) he would join in recommending rehabilitation, he does not appear to be consistent, for, in the next paragraph, he expressed his belief that the sentence "is both just and clement and I do not recommend clemency."[2] We are uncertain as to his meaning. United States v Papciak, supra.

The record is silent as to whether the power of commutation was ever considered by either the Acting Staff Judge Advocate or the officer exercising general court-martial jurisdiction. In view of the strong recommendations for rehabilitation by the Noncommissioned Officer in Charge of the Dover Detention Facility and the Prisoner Disposition Board, commutation would seem to have been particularly appropriate in this case.

We believe that the failure to call attention to this alternative in the post-trial review was error. Prejudice is apparent. Cf. United States v Prince, supra; United States v Fraser, 15 USCMA 28, 34 CMR 474.

## II

The second granted issue concerns the president's instruction on deposition testimony. Therein, he told the court:

"In the present case certain testimony has been read to you by way of deposition. You are instructed that you are not to discount this testimony for the sole reason that it comes to you in the form of a deposition. It is entitled to the same consideration, the same rebuttable presumption that the witness speaks the truth, the same judgment on your part with reference to its weight, as is the testimony of any other witness."

This is, almost verbatim, the same instruction we held to be prejudicially erroneous in United States v Griffin, 17 USCMA 387, 38 CMR 185, and United States v Brown, 17 USCMA 390, 38 CMR 188. The minor differences in the text are not of such a nature as to eliminate the error. Whereas, in this case, the president used the words "the same rebuttable presumption that the witness speaks the truth," the law officer in *Griffin,* supra, said "the same rebuttal, the presumption that the witness speaks the truth."

As we said in *Griffin,* the advice directed the court to treat the deponent's credibility as if he had appeared before it in open court and confronted the members. Yet, it is obvious he had not done so, and one of the first considerations in credibility is the opportunity for the finders of fact to observe the demeanor and behavior of the witness who appears before them. More importantly, the instruction is also defective in referring to the deponent as being entitled to "the presumption that the witness speaks the truth," as if he had testified in open court. No case is called to our attention which approves the unexplained use of such a presumption in a criminal case. (See United States v Griffin, supra, at pages 388 and 389.)

In *Griffin,* we held that there was a fair risk of harm to the accused's substantial right to have the court properly

---

[2] The recommended reduction in the confinement and forfeitures to two months each was based on the failure of the president to instruct on sentence with reference to the effect of the in-

troduction into evidence of other misconduct not charged. (United States v Averette, 17 USCMA 319, 38 CMR 117; United States v Baskin, 17 USCMA 315, 38 CMR 113.)

judge the credibility of all the witnesses because it had received for consideration depositions in which the two principal witnesses told opposing versions of what occurred. Similarly, in *Brown*, 17 USCMA 390, supra, the deponent was a major prosecution witness with respect to almost all of the charges against the accused and, in addition, he had testified therein on the initial issue of mental responsibility as to all such charges.

In the case at bar, the deponent was the victim of the specification alleging assault with a deadly weapon. The only other testimony on this issue was the stipulated testimony of a witness who observed the encounter between the victim and the accused, saw an open-bladed knife in the accused's hand and who later retrieved the knife when the accused dropped it outside the Service Club and gave it to a security policeman. The knife was entered into evidence as a part of the stipulation. Such a stipulation, however, does not admit the truth of the indicated testimony, nor does it add anything to the weight or the evidentiary nature of the testimony. It is only an agreement that if the witness were called he would so testify. (Paragraph 154b(2), Manual for Courts-Martial, United States, 1951.)

We find little to choose between the situation here and that in United States v Brown, 17 USCMA 390, supra. Not only was the court misled with reference to the deposition testimony of a crucial witness but, for ought we know, it also improperly credited the stipulated testimony in the same manner, for the court was never informed of the status in law of such a stipulation. That this latter testimony was considered important we have little doubt, for trial counsel, in his argument to the court, referred to it as substantiating the deposition of the witness. In addition, at the request of one of the members, this stipulation was again read to the court following the president's instruction.

We hold, therefore, that the complained-of instruction of the president constituted prejudicial error with reference to specification 2, alleging assault with a dangerous weapon. Reversal of the conviction thereon is required. United States v Brown, 17 USCMA 390, supra.

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Air Force. A board of review may reassess the sentence on the remaining finding of guilty of simple assault, or a rehearing may be ordered.

Judge DARDEN concurs.

Chief Judge QUINN concurs in the result.