UNITED STATES, Appellee

v

GARY P. EDWARDS, Private First Class, U S Army, Appellant

No. 28,130

August 2, 1974

*Captain Donald R. Jensen* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick, Captain John T. Willis, Captain Gilbert J. Weller,* and *Captain Richard T. Simmons, Jr.*

*Captain Nancy M. Giorno* argued the cause for Appellee, United States. With her on the brief were *Lieutenant Colonel Donald W. Hansen, Captain R. Craig Lawrence,* and *Captain Robert C. Roth, Jr.*

## OPINION OF THE COURT

QUINN, Judge:

The accused contends that he was prejudiced as to the sentence approved by the convening authority because of deficiencies in the post-trial advice of the staff judge advocate. See Article 61, Uniform Code of Military Justice, 10 USC § 861; United States v Fields, 9 USCMA 70, 25 CMR 332 (1958).

As the accused's best chance for reduction of the sentence adjudged by the court-martial is at the convening authority level, information favorable to the accused and known to the staff judge advocate should be included in the advice. An advice that is substantially incomplete may mislead the convening authority to the accused's prejudice. United States v Boatner, 20 USCMA 376, 43 CMR 216 (1971); United States v Cash, 14 USCMA 96, 33 CMR 308 (1963). Appellate defense counsel contend there are three material deficiencies in the advice in this case.

One of the alleged deficiencies is that in a personal history statement regarding the accused, Captain Fess, the interviewing officer who prepared the statement, indicated he thought the accused had rehabilitative value and "fel[t] that . . . [he] could make a contribution to the Army." Acting as commanding officer of the accused's battery, Captain Fess forwarded the charge sheet to battalion. His letter of transmittal contained a notation that the accused's conduct was unsatisfactory, and in a section titled "Rehabilitation," he said "None." Captain Fess further indicated that these remarks were submitted "to substantiate a request for a General Court Martial." Plainly if the favorable material in the personal history statement should have been brought to the attention of the convening authority, as appellate defense counsel insist, the staff judge advocate would also have had to mention the contemporaneous assessment of the accused Captain Fess made in his capacity as battery commander.

Placed side by side, Captain Fess' evaluation of the accused as battery commander would appear to outweigh the rather tentative assessment he made as interviewing officer. See United States v Boatner, supra at 377, 43 CMR at 217. On balance, therefore, omission of any reference to Captain Fess would appear to have operated to the accused's benefit rather than his disadvantage. Assuming, however, that all that Captain Fess said about the accused should have been set out in the post-trial advice, we are not persuaded that his conflicting opinions as to accused's potential for rehabilitation and continued usefulness to the Army would have influenced the convening authority to approve a lesser sentence than he did.

■ The second alleged deficiency is the omission of comment on an unsigned reference of the charge to trial before a special court-martial. The action was taken by the battalion commander. Appellate defense counsel construe the reference to mean that the special court-martial would have no authority to adjudge a bad-conduct discharge. Whether this construction is justifiable need not detain us; the reference is only part of the evidence on this point. Assuming the unsigned reference to trial was operative, a matter disputed by the Government, subsequent to its execution, the charge was made the subject of an Article 32 investigation. Thereafter, the battalion commander recommended trial by "BCD—Special Court-Martial." In his letter of transmittal he attributed the recommendation to "the gravity of the charges." The natural inference from the succession of events is that the battalion commander reassessed the seriousness of the accused's offense after he learned more about its details. The commander's second recommendation contemplated that if convicted, the accused's conviction could include a punitive discharge and confinement at hard labor for 6 months. The sentence approved by the convening authority, on the recommendation of his staff judge advocate, included a bad-conduct discharge and confinement for only 5 months. It reasonably appears, therefore, that, if the convening authority had been advised of the successive recommendations by the bat-

talion commander and the circumstances that led to them, he would not have regarded the information as so favorable to the accused as to justify a more lenient sentence than the one recommended by the staff judge advocate.

The third alleged deficiency in the post-trial review is the omission of what appellate defense counsel describe as an "exchange" between the accused and Major Cooper, an officer who had been detailed to inquire into the circumstances of the loss of money from a shipment by a branch post exchange to a bank. The money had been stolen by the accused and several others, including a soldier named Koch. The most important matters in the "exchange" are that the accused allegedly turned over to Major Cooper $600 of the stolen money, and the major recommended to the battalion commander that the larceny charge against the accused be referred to a special court-martial.

Three documents by Major Cooper were considered in the Article 32 investigation; these provide the basis for appellate defense counsel's argument. In one of the writings, Major Cooper indicated that on November 7, 1972, he was "approached" by the accused and Koch, and they offered their "help [to] get back some of the missing funds." The next evening "they came back" with $600 in an envelope; the major "believe[d] it was Edwards that handed" him the money. At that time, both were questioned but only Koch named "other people involved." Major Cooper specifically asked about the remaining money and "how" it could be recovered, but the accused "didn't tell" him.

In the second document, described as an "Interim Report of Investigation of Loss of Funds," Major Cooper indicated that Koch immediately confessed that he had part of the money, but the accused dissembled as to his role in the loss. Later, the accused "inferred that he had knowledge" of the location of some of the money, but he refused to make a statement to that effect. Major Cooper also referred to a statement given by the accused to his battery commander in which the accused "in effect admits to conspiring . . . to steal the money." The

third document is the final report in the same investigation. Attached to it as an exhibit is the typescript of a handwritten statement[1] by the accused in which he admitted that when the "CID came," he instructed two of the others involved in the theft "to take the money & hide it;" that he himself hid the share of another participant, which later "got . . . stolen;" that he "payed bills" with some of the money; and finally, he noted that "Koch turned himself in."

■ Appellate defense counsel suggest that the accused's "exchange" with Major Cooper reveals him as eager to do all he could to lessen the consequences of his crime and to prove that he was worthy to be retained in the service. In our opinion, the more obvious picture that emerges from the documents is that the accused was one of the leaders of the theft; that he directed concealment of the money when the CID entered the investigation; that he used some of the stolen money for his personal needs, and did not even offer to make restitution of the share he personally obtained from the proceeds of the theft, even after he admitted his participation in it; that he was an opportunist who, only after Koch "turned himself in," assumed the mantle of the penitent by assisting Koch in the return of $600 of the $1523 that was recovered "as a result" of Koch's "admission of larceny;" and that he foreclosed

timely pursuit of other possible avenues for recovery of the money by refusing to name other participants in the theft.

If he is not merely to repeat all that went before, a staff judge advocate must necessarily exercise selectivity as to the matters to be included in the post-trial review. United States v Cash, supra; United States v Fields, supra. Had the staff judge advocate included the Major Cooper "exchange," as appellate defense counsel insist he should have, then he would have been obligated to present the whole of the matter. Although the accused assisted in the return of $600 of the more than $8,000 that was stolen, his effort was belated and he was only partially cooperative. It also clearly appears he was accorded all the consideration he had hoped for when Major Cooper recommended trial by special court-martial. We have no hesitancy in concluding that had all the information as to the "exchange" been included in the staff judge advocate's review, it would not have influenced the convening authority to approve a sentence more lenient than that recommended by the staff judge advocate, which was less than that provided in the accused's pretrial agreement.

The decision of the Court of Military Review is affirmed.

Senior Judge FERGUSON concurs.

---

[1] At the Article 32 hearing, the accused denied that he wrote or signed the handwritten statement. Since he later pleaded guilty to the charge, it may reasonably be inferred that the recitals in the statement accurately recounted his role in the theft.